## LASTER v. TEXAS MUT. LIFE INS. ASS'N.
### No. 3222.

Court of Civil Appeals of Texas. El Paso. Sept. 26, 1935.

Rehearing Denied Oct. 24, 1935.

Carney & Carney, of Atlanta, for appellant.

Bartlett & Bartlett and B. F. Whitworth, all of Linden, for appellee.

PELPHREY, Chief Justice.

On March 3, 1932, appellant, on behalf of her mother, Mrs. Vonnie Betts, made application to appellee for insurance on the life of Mrs. Betts in the sum of $5,000, with herself named as beneficiary.

In the application, questions as to whether Mrs. Betts was in good health and free from all bodily ailments and disease, and whether she had ever had or been told that she had a kidney disease were asked. The first question was answered in the affirmative and the latter in the negative.

A certificate was issued dated March 18, 1932, and delivered the same date, according to the testimony of appellant. Mrs. Betts died on the 19th day of March, and this suit is brought to recover the amount of the certificate.

The cause was tried to a jury, which found in response to special issues: That appellant applied for an insurance policy with appellee in the sum of $5,000 in the name of her mother; that the agent of appellee did not represent to appellant that he had visited her mother and knew her to be a good insurance risk; that the agent of appellee represented that the filling out of the application was a mere matter of form; that appellant did not upon receipt of the policy tell the agent that her mother was ill and request the return of the premium theretofore paid to him; that he did not represent to her that he had been to see her mother and knew that her illness was slight and in nowise affected the validity of the policy; that the agent told appellant that it was not necessary for the policy to be signed by either herself or her mother upon its receipt; that appellant's mother was not in good health at the time appellant signed the application; that she had had kidney trouble prior to the signing of the application; that she was not in good health at the time the policy was delivered; that she had consulted a physician within three years prior to the signing of the application; that appellee's agent did not know that appellant's mother had consulted a physician within three years; and that appellant did know of such consultation.

From a judgment that appellant take nothing, she has appealed.

## Opinion.

Appellant complains of the trial court's action in admitting evidence of the contents of a note; in refusing to permit her counsel to examine a witness for appellee concerning two suits instituted by the witness and her husband against appellant; in refusing to permit a witness for appellant to testify that appellant had paid all her mother's bills for a period of more than two years prior to her death; in refusing a new trial because of improper argument by appellee's counsel and because of misconduct of the jury.

Mrs. R. B. Festervand, a sister of appellant, gave the following testimony:

"Q. Do you remember an occasion of coming with your husband to Linden sometime in March, 1932, about a suit or something? A. Yes, sir.

"Q. When he came to Linden and went back, did you go back through Atlanta? A. Yes, sir.

"Q. Did you stop there? A. Yes, sir.

"Q. Did you receive any message from anyone while you were there? A. Yes, sir.

"Q. Who brought the message? A. I don't know, a boy.

"Q. Who was the message from? A. From Era Laster.

"Q. Your sister? A. Yes, sir.

"Q. Do you know your sister's handwriting? A. Yes, sir.

"Q. What became of that message or note sent to you? A. I don't remember just what I did with it.

"Q. You don't have it? A. No, sir, I sure don't.

"Q. Was it a short message? A. Yes, sir, just a few lines. * * *

"Q. You say that was in your sister's handwriting? A. Yes, sir.

"Q. What did the message state? A. That my mother was in bed sick. * * *

"Q. What did you all do after you got the message? A. We went up there to see her.

"Q. That was the second of March? A. Yes, sir. * * *

"Q. What was the condition of your mother at the time you got up there? A. She was in bed feeling mighty bad."

The statement of the witness as to the contents of the message was objected to as not being the best evidence, and on the ground that no sufficient predicate had been laid for the introduction of secondary evidence.

In support of the trial court's action, appellee contends that proper predicate was laid, and that, if not, then the contents of the note related to a matter which did not form the foundation of the cause of action or the defense, and therefore did not come within the best evidence rule.

For secondary evidence to be admissible, it must be shown that some search was made or diligence used to obtain the primary evidence. 17 Tex. Jur. § 189, p. 486.

The only evidence here on the subject is that the note had been received more than two years prior to the time she was giving her testimony, and that she did not know what she had done with it. This was certainly not sufficient.

Nor can we agree that the contents of the note did not relate to a matter forming the foundation of appellee's defense.

Appellee pleaded, among other defenses, that appellant's mother was not in good health and was not free from bodily ailment or disease at the time appellant signed the application.

Appellant testified that she signed the application and paid the premium on the 3d day of March and introduced in evidence a check payable to the agent bearing that date. The questions raised by the above-mentioned pleading were submitted to the jury. It seems clear that the condition of the health of appellant's mother on the date the application was signed was one of the vital issues in the case, and we are unable to reach any conclusion other than that the statement in the note that she was sick in bed related to that issue. The admission of the evidence over the objection calls for a reversal of the judgment.

It was brought out from Mrs. Festervand on cross-examination that she and her husband had filed suits against appellant. She was asked this further question: "Q. And you have another suit against her now—you got about $80.00 on that first suit, that $500.00 suit. * * *" At this point appellee objected, and the objection was sustained.

Appellant now contends that she should have been permitted to interrogate the witness fully as to the suits in order to show her animus. The extent to which cross-examination may go for the purpose of showing animus of the witness largely rests in the discretion of the trial court, 70 C. J. § 1170, p. 966, and we cannot say that the court abused that discretion by refusing to permit the witness to be interrogated as to all the details of the

litigation between herself and husband and appellant.

There being no dispute between appellant and appellee, as to appellant's authority to sign the application for insurance, we fail to see the materiality of the proffered evidence to the effect that appellant had been supporting her mother.

In view of a reversal of the judgment, we shall not discuss the assignments relating to improper argument and misconduct of the jury.

The judgment is reversed, and the cause remanded.