**ANGELINA CASUALTY COMPANY,**
Appellant,

v.

**Clay RYAN, Appellee.**

No. 12821.

Court of Civil Appeals of Texas.

Galveston.

July 7, 1955.

Rehearing Denied Oct. 6, 1955.

Joe J. Newman, Groveton, Collins, Garrison, Renfrow & Zeleskey, and Glenn Barber, Lufkin, for appellant.

Fulmer, Fairchild & Barnett, and Robert C. Barnett, Nacogdoches, for appellee.

CODY, Justice.

This was a suit by appellee, Clay Ryan, to recover from appellant, Angelina Casualty Company, the compensation carrier for appellee's employer, Texas Long Leaf Lumber Company, compensation benefits for injuries sustained while working for his employer on January 25, 1952. Based on the verdict, the court rendered judgment for appellee for total and permanent disability in one lump sum in the amount of $9,136.04 together with interest, one-third of said sum so awarded to appellee to be paid to appellee's lawyers as attorney's fees.

Appellant has predicated its appeal upon 19 points, the first 18 of which complain of argument made to the jury by appellee's attorney, and the 19th of which complains of an alleged improper communication made by a witness for appellee with one of the jurors.

The law relative to the necessary showing to be made by one complaining of an improper argument, so as to entitle the complainant to a new trial, has recently been reviewed by the Supreme Court in Texas Employers' Insurance Ass'n v. Haywood, 266 S.W.2d 856, 858, wherein the court makes the following holdings:

1. Generally speaking, objection must be made to the argument at the time it is made and by the court overruled for "It is only when the probable harm or the resulting prejudice cannot be eliminated or 'cured' by retraction or instruction that a new trial will be awarded in the absence of timely objection. * * *"

2. Where the argument is improper only because its nature is calculated to inflame the minds and arouse the passion of prejudice such argument is usually regarded as being of the "curable" type. However, this is not an invariable rule. Appeals to national, racial or religious prejudice are apt to be held not curable by an instruction to the jury to disregard the same.

3. The Supreme Court often reverses judgments because counsel used the medium of argument to get before the court any or different evidence even though objection was not timely made thereto.

In its first point appellant complains that appellee's counsel stated to the jury that he had expected appellant's counsel "with all of his showmanship, serenading and entertaining * * * that he would somewhere down the line try to get your prejudice worked up, if you had any, against this humble Negro, because of his color. He's black. He was born black and he will be black when he dies. He is not a bit blacker than he was the day he got hurt."

The record will certainly support the inference that appellant's lawyer exercised showmanship and entertainment. It appears from a pre-trial deposition that appellant had testified that some of his trouble was related to his medulla oblongata. It was also brought out that appellee had for a short time served as a chauffeur to Al Capone. Upon cross-examination appellant's attorney, who displayed considerable talent for persiflage, asked appellee if he was not contending that he had sustained a medulla oblongata as a result of his injury, and if it hurt badly, etc. In the same spirit of raillery counsel cross-examined appellee about his association with Al Capone. No objections appear to have been leveled at these questions and it does not readily occur what objection would have been valid unless the matter of having served Al Capone as a chauffeur was too remote to be gone into. Appellee's counsel may well have considered any such objection would have done his cause more harm than good.

About the only remedy appellee had was to refer to the levity or want of dignity covered by such words as "showmanship, entertainment", etc.

 Counsel's statement that appellant's counsel was seeking to work up racial prejudice against appellee is not supported by the record. The same line of questioning would have been just as amusing or entertaining had it been addressed to a plaintiff who was white as it was when addressed to appellee. While courts will not tolerate any attempt to arouse prejudice against a participant in a trial because he may be a Negro, nevertheless the fact that he is a member of the Negro race does not hedge him about with any greater sacredness or freedom from legitimate cross-examination than if he were a member of the white race. It is no less reprehensible to seek to arouse sympathy for a litigant because he may be a humble Negro than it is permissible to arouse prejudice against him. See 41–B Tex.Jur., Sec. 262; Id. Sec. 267; Cooke-Teague Motor Co. v. Johnson, Tex. Civ.App., 50 S.W.2d 399.

 Appellee stated, and we suppose in justification of his charge that appellant's counsel was seeking to arouse prejudice against appellee because he was a Negro, that appellant's counsel many times in his argument to the jury referred to appellee as a "colored boy" though appellee was in his late 50's. Webster's Collegiate Dictionary defines "boy" as "1. A male child from birth to puberty; youth; familiarly, a man. 2. A male servant; specif., as in China, India, etc., a male servant, laborer, or slave of a native or inferior race; also, a man of such a race." Thus, "boy", except in China and India, does not specify a member of an inferior race. Expressions which are the custom of the country cannot be deemed as prejudicial, nor can the jury be presumed to have considered references to appellee as a "colored boy" as an attempt to stir up racial prejudice. It may well be that Negro men began being called boys in the time of slavery but it is doubtful whether the ordinary juror would have sufficient scholarship to be aware of that fact in any

event. It is the custom of the country to use such terms and it is not deemed any more derogatory than the term "Negro".

Appellant did not object to the argument except in the motion for a new trial. We cannot hold that an instruction to disregard the argument would not have been effective to remove its harmful effect.

 In its second point appellant complains of appellee's argument accusing appellant of refusing to fulfill its contract of insurance after accepting payment of premiums, but instead of paying off appellee's claims, paid an adjuster to run all around to trick and trap the appellee; and that appellant further hired high-priced lawyers to fight the case and engaged the services of high-priced doctors. Of course insurance companies have the same right to contest their liability on claims for compensation benefits as is accorded any other litigant who contests liability of claims that are urged against them, and if claims of right to recover compensation benefits are to be contested the insurance company must make use of investigations, attorneys and doctors. But no timely complaint was made to such argument and we are unable to state that an instruction to the jury to disregard such argument would not have cured the error.

 In its third point appellant complains that in the argument made on behalf of appellee it is stated that Dr. Smith (whom appellee's counsel knew was qualified to testify as a medical expert from having had him as an adverse witness on former trials but chose not to stipulate his qualifications) had bragged on his qualifications for 22 minutes, by counsel's watch; and further stated that said doctor had been brought down from Houston to testify and was no better qualified to testify than the Negro doctors. It is too well known to require citation of authorities that where a litigant wishes to introduce specific evidence as to time and measurements, such evidence must either be regularly introduced or stipulated to. However, no objection was made to the argument until the

314

motion for new trial was presented. In and of itself, and standing alone, we rule that the argument could have been cured by an instruction to the jury not to consider same had appellant requested same.

In its fourth, fifth and sixth points appellant complains that appellee's counsel informed the jury of the legal effect of their findings as to permanent disability and that permanent disability was a matter of 401 weeks; and further complains that the jury was told that a finding of total disability would give appellee $9,000, out of which he would have to pay his attorneys one-third; and further complains that the jury was informed that if the jury figured the wage rate down to $31 a week, appellee would get only $18 or $19 per week. These arguments were timely objected to, the court sustaining the objection to appellee's counsel informing the jury as to the result of figuring the wage rate down to $31 a week.

While we do not agree with appellee that allegations which were set forth in his petition had the effect of informing the jury that said allegations were true and could be taken by the jury as being true, so that any statement by appellee's counsel informing the jury of such matters was merely giving the jury such information as they already possessed, nevertheless this was a case in which a lump sum settlement was sought and the jury was entitled to know what ultimate sum the appellee would be called upon to manage. We do not hold that said argument so complained of constituted reversible error.

In its seventh point appellant complains that appellee's counsel went outside the record to tell the jury that his said counsel, or his counsel's firm, was having to support appellee and this would not have had to be done had appellant paid what appellee considered appellant's lawful obligation to appellee.

Appellant further complains in its ninth point that appellee's counsel informed the jury that appellee had no funds with which to bring a doctor down from Houston to the trial who had theretofore examined appellee in Houston, and that appellant did not even know that appellee's counsel or his firm was supporting appellee; and appellee's counsel further stated: "Would you expect this old boy (appellee) who had no income, who had no money, to pay another several hundred dollars, as indicated here, to bring a doctor down from Houston?"[1]

Appellant further complains in its twelfth point that appellee's counsel argued: "Certainly I am entitled to my money back (which he had lent to appellee, pending the trial), but you don't owe it to us, and you are not supposed to betray your duty to give it to me. But it works another thing, if I hadn't been sincere that the jury down here would know that I had plum dog-gone good case, I wouldn't have been putting out no such money as that and borrow it myself to do it. Would I? No. I may make lots of errors but I'm not crazy. I knew I had a good law suit and I knew twelve men down here would find it. That's why I went to such an extent as that. He had to live. That's just an indication of my sincerity." The sincerity of counsel is not a proper issue in the case in that it is taken for granted. The record here shows that appellee himself was asked on cross-examination if it had not been arranged between him and his lawyer that they would "ride the case out" together and that the lawyer would finance appellee until the case was disposed of. In this connection appellee was further asked, on cross-examination, if it was not true that his lawyer agreed to finance him during the pendency of the suit. Appellee said no such thing was mentioned. So it appears that in argument appellee's counsel came near to giving unsworn testimony which impeached that given by his client upon examination. Counsel cannot give lip service to the principle that the jury was told that it should only return a correct verdict while at the same time he is in effect appealing to the jury for a verdict so he can get off the

1. It will be noted that appellee's counsel also referred to appellee as "boy".

hook, or get his money back. While this argument was not objected to at the time it was made, it would be difficult to think of an argument which was more improper. It is wrong for an attorney to seek to arouse an unwarranted sympathy for his client. How much worse is it to appeal to the sympathy of the jury for a verdict so that the attorney will not lose money which he has advanced to his client? We hold that the argument was not "curable" by an instruction.

We deem it unnecessary to extend this opinion further to take notice of other complaints of improper argument, save only appellant's point 18, which complains of the cumulative and ultimate effects of improper arguments made on behalf of appellee to the jury. We also sustain appellant's said eighteenth point.

The last point deals with a complaint of a communication between one of appellee's witnesses and a juror. This is not apt to occur upon another trial and need not be discussed.

The judgment is reversed and the cause remanded for a new trial.