**TEXAS EMPLOYERS' INSURANCE ASSO-
CIATION, Appellant,**

v.

**Doroteo GARZA, Appellee.**

No. 6732.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 16, 1957.

Rehearing Denied Jan. 13, 1958.

**522**

Vickers & Vickers, Lubbock, for appellant.

Huff & Splawn, Lubbock, for appellee.

CHAPMAN, Justice.

This is a workman's compensation case. Texas Employers' Insurance Association, carrier for Plains Cooperative Oil Mill, has appealed to this court from a judgment of the court below based on a jury verdict for appellee, Doroteo Garza, in an action for an alleged injury sustained by Garza during the course of his employment with said oil mill and for recovery for his alleged impaired earning capacity as the result thereof. The trial court's judgment was based on the jury's findings that appellee was totally disabled for 201 weeks as a result of the accidental injury alleged, and that from the end of such period of total disability he would be permanently disabled to the extent of 50 per cent. The injury was alleged to have occurred to appellee's "low back while he and another employee were lifting protective plates to change saws in the lenter about 3:00 A.M." The record shows the plates weigh about 300 pounds.

Appellant's first point is that: "The trial court erred in refusing appellant the right to show that Garza, through involvement with the marijuana charge three days before the claimed injury knew he was about to be discharged, to show motive and bias against this oil mill policy, as to whether he actually sustained an injury or merely simulated an injury."

The first fault we find with appellant's assertion of error in the court's refusal to permit the proffered testimony is that the evidence shows, even by the doctor who was offered by the insurance company, that appellee was not simulating the injury. Appellant's counsel asked his witness, Doctor Lewis:

"Q. * * * what if anything did you find that was wrong with Doroteo Garza that might have been caused by an injury he claims to have sustained to his back about two days before you saw him? A. * * * that this was a sprain of the back and of the muscles in the lower part of the back on the left side. * * * That is the impression I had of him on the one time I saw him.

"Q. Of the back? A. Yes, and he had at that time it appeared to be of a degree between mild and moderately severe."

The second fault we find with appellant's point one is that the testimony offered from Garza's deposition for the purpose of showing appellee knew the company policy of discharging employees charged with a criminal offense was not of sufficient probative value to establish such fact. Without burdening this opinion with the space necessary to quote the testimony we do not hesitate to say that when consideration is given to the fact that Garza was an illiterate Mexican who could neither read nor write and could not understand English very well that his responses to the interrogation which sought to prove he had previous knowledge, as an old oil mill employee, of the oil mill policy to discharge anyone connected with a serious criminal offense, were not of sufficient probative value to establish such fact.

Even if there were sufficient evidence of probative value to establish the fact that appellee simulated his injury and that he knew the company policy of discharging employees charged with criminal offenses, we still would not consider the trial court committed error in refusing appellant the right to offer testimony that a few days prior to appellee's injury he had been charged with possession of marijuana. The extent to which cross-examination may go for the purpose of showing animus of the witness largely rests within the sound discretion of the trial court. Laster v. Texas Mut. Life Ins. Ass'n, Tex.Civ.App., 86 S. W.2d 842; Nichols v. Adler, Tex.Civ.App., 268 S.W.2d 789; Traders & General Ins. Co. v. Robinson, Tex.Civ.App., 222 S.W. 2d 266.

■ It has also been held in a damage suit for wrongful death that evidence that a criminal charge, growing out of the transaction on which the civil case originated, is pending against a witness therein, is not admissible to show his bias or interest in the outcome of the case. Quesada v. Graham Ice Cream Co., Tex.Civ.App., 207 S.W.2d 120. In Texas & P. Ry. Co. v. Dishman, 41 Tex.Civ.App. 250, 91 S.W. 828

(writ refused) the court held that defendant in cross-examining plaintiff had no right to elicit testimony that plaintiff had had a great number of suits against defendant as bearing on his good faith in bringing the suit or to show bias or feeling against defendant. The court appropriately stated, "whatever appellee's intent or good faith in bringing the suit may have been, it would not affect his right to a recovery, if he stated and proved a good cause of action." The refusal to permit such hearsay testimony being within the sound discretion of the trial court we cannot say the court abused its discretion in refusing it.

Appellant, in its second point, asserts the trial court erred in refusing to allow it to prove Garza's conviction of bootlegging in Lamesa subsequent to his discharge at the oil mill on the question of relevancy in proving his subsequent earning capacity.

■■ From the record before us there is not any showing that appellant could have proven profits to appellee in bootlegging, even if the trial court had permitted it to go into that subject. The first question asked appellee was:

"Q. Have you made any money doing anything since you left the Plains Oil Mill, Doroteo? A. No, sir.

"Q. You were picked up down there at Lamesa there for bootlegging though in February?"

The court then sustained an objection to this line of testimony. In the record before us there is not any testimony to show that appellant completed his bill of exceptions by proof, out of the presence of the jury, that appellee had made profits in bootlegging. As a matter of fact, the only indication of his having been bootlegging was the question asked by the attorney for appellant. In the first place his question would not be evidence of the fact he was seeking to prove and if it could be said that it constituted evidence, which it did not, it was only to the effect that he

had been picked up and not that he had made profits. Additionally, the proper inquiry should be as to whether the workman has suffered impaired earning capacity rather than loss of earnings. Texas Employers' Ins. Ass'n v. Mallard, Tex.Civ. App., 192 S.W.2d 302.

■ Appellant's third point is based on objections to argument made by attorney for appellee. Two doctors testified, Doctor Lewis for appellant and Doctor Tull for appellee. One of the attorneys for appellee had sent him to both doctors, but another of his attorneys had tried the case. In his argument to the jury the attorney denied that Mr. Huff had sent appellee to Doctor Lewis. An objection was duly and properly made. The court sustained the objection and instructed the jury not to consider the argument of counsel in that respect. Appellant contends the argument was so prejudicial that it could not be cured by instruction.

For authority on its contention made in point three, appellant cites two cases, Angelina Casualty Company v. Ryan, Tex. Civ.App., 282 S.W.2d 310, 313, and Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856, 858. In the former case, in which the argument was of much more prejudicial nature than our case, the court said:

"But no timely complaint was made to such argument and we are unable to state that an instruction to the jury to disregard such argument would not have cured the error."

In the latter case, Judge Calvert, speaking for the Supreme Court of Texas, said:

"The true test is the degree of prejudice flowing from the argument—whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the prob-

ability that it resulted in an improper verdict."

Even under the two authorities cited by appellant we would have to say, in light of the two statements just quoted, that any error in the argument complained about was cured by the court's instruction not to consider it. From the record of the argument, as we read it, counsel was mistaken in what appellee had testified and made a statement in his argument to the jury that was not in the record. When objection was made the court promptly cured any error made by instructing the jury not to consider it. Anyhow, we are at a loss to understand how the jury could have been prejudiced by such argument. They had heard the testimony from appellee himself that Mr. Huff had sent him to Doctor Lewis. When claimant's attorney then told the jury otherwise we would consider that if there was any prejudice by the jury growing out of the argument it could just as well have been against appellee for the contradiction in his testimony and his counsel's argument.

Appellant's Points four, five, six, and seven are all based on alleged jury misconduct. Complaint is made that the jury committed reversible error in discussing what proposed percentage awards would amount to in dollars and cents; in discussing the personal experience of the foreman of the jury with a back injury while deciding which doctor's testimony to follow; in discussing appellee's attorney's fees as included in the award to be made; and in discussing that since appellee had a wife and five children any doubts should be resolved in his favor.

Under Rule 327 of Texas Rules of Civil Procedure the burden is now on the complaining party not only to prove, by a preponderance of the evidence, that the jury was guilty of misconduct, but also to show that the misconduct probably resulted in injury to him. Stotts v. Love, Tex. Civ.App., 184 S.W.2d 308; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

Let us now examine the testimony in light of this burden.

The juror Cassell testified the jury discussed, in connection with the subjects of total and partial and the number of weeks, how much money it would give to appellee and in connection therewith discussed that he would have to pay attorney's fees. He further testified the juror Helmstetler mentioned that since Garza had a wife and five children he should receive the benefit of the doubts. He further testified that he brought up the question of the foreman, Hunter having had a back injury while in the service and the uncertainty of a doctor locating it and that with "all the extensive government examinations that he had didn't reveal this broken back until two years." But, on further direct examination he testified:

"There might have been something mentioned, but as far as what we had said having actual bearing on the following of one doctor or another, I don't recall that."

On cross-examination the juror testified when the back injury was brought up that juror Hunter, the foreman, reminded the jury that that was not in evidence and not part of the case and should not be discussed, and it was stopped at that time.

Juror witness Caddell testified it was mentioned that Garza would have to pay attorney's fees but no amount mentioned. Then someone said "Well, lets just let that go." Said, "That is to be considered in the case anyway. Something to that effect." He also testified something was said about the family, "I just couldn't say exactly what was said."

"Q. Some discussion. A. Yes, and the foreman said, 'Well, lets disregard that. That doesn't pertain to the case.'"

This juror witness also testified something was said about what the award would mean in dollars and cents.

Then on cross-examination the juror testified:

"Well, there was a remark made that his attorney was going to get their part of it and the thing for us to do was go ahead and decide on the charge that we had there."

"Q. In other words, on the evidence and the court's charge that you had before you. A. Yes, sir.

"Q. Without any regard to attorney's fees? A. Yes."

This juror also testified when something was mentioned about Mr. Hunter's experience with his back someone said, "Well, now that doesn't pertain to our case here whatsoever," said, "Lets don't talk about that."

Appellant's Juror Witness Webb testified something was said to the effect "that if we didn't do such and such, we would have the widow and five or six kids on our shoulders."

"Q. Was there any considerable discussion after that? A. Not on that particular subject."

This juror testified there was not any discussion of attorney's fees "until after it was over."

This juror in replying to a question as to whether there was any discussion in the jury room about what the various percentages would amount to in dollars and cents testified:

"There wasn't a lot of discussion about that, but somebody did figure it up and stated to the jury about what it amounted to, but that is all I recollect in the way of discussion about it."

"Question by the Court: In other words, he took the figures that the jury had agreed upon and made the estimate, is that it? A. No, I say we was bound to have been about through with the case before we could have made an estimate, but whether we had completely

finished or not, I couldn't say, but it was bound to have been toward the end of the discussion."

The juror witness Hunter, placed on the witness stand by appellee, testified:

"Q. State whether or not you recall bringing them back from outside discussions several times? A. Everytime that I felt that something was said that should not have been brought into the discussion there, I would tell them that it had no bearing on this case and that it was not to be discussed.

"Q. Can you tell the court whether or not they pretty generally followed your instructions, your advice at that time. A. I had no trouble with any of them on it."

On cross-examination of the foreman concerning discussion of "outside" matters the witness answered:

"I think you have the wrong idea about the discussion on the attorney's fees, because there was no discussion, as I recall it. It was mentioned, but they were told that that was not supposed to have any bearing on our decision as to how much he would get."

"Q. Then, the jury then, also, in its discussion about this time talked in terms of awarding Garza about $7,500.00 didn't it? A. I don't know whether that specific amount was spoken of right there or not, but somewhere after we had decided for it to run there a certain period of time, and I don't recall, if I remember correctly on it, we agreed that he was to have total disability for a certain period of time and the partial for a certain period of time, but I don't recall any exact amount there at all."

The juror further testified that the question of Garza having five children and the question of his (the foreman's) back injury was discussed in the court room in the selection of the jurors and that when it was mentioned in the jury room that that had no bearing on the case at all.

■ The juror witness Helmstetler testified he did not recall making the statement attributed to him by juror witness Cassell concerning the jury's having the claimant's wife and five children on their conscience. Clearly there was conflict in the testimony of the juror witnesses used. When the testimony of jurors is conflicting it is for the trier of the facts to determine whether or not there was jury misconduct. Traders & General Ins. Co. v. Gibbs, Tex. Civ.App., 229 S.W.2d 410. The trial court found the facts against appellant.

Appellant asserts any one of the grounds it has raised of jury misconduct "would cast grave doubt upon the propriety of the jury's award, but the combination surely reflects serious misconduct, particularly in the light of their large award."

■ With respect to attorney's fees being mentioned in the court room there is no evidence that any juror took into consideration the amount appellee would have to pay for attorneys in arriving at his damages. Additionally, one of appellant's own juror witnesses testified there was not any discussion of attorney's fees "until it was over." Certainly we would have to say on this phase of jury misconduct objections that the trial court did not abuse its discretion in denying a new trial. Roy L. Jones Truck Line v. Johnson, Tex.Civ. App., 225 S.W.2d 888.

■ The record shows the size of appellee's family and the fact that one of the jurors had had a back injury was discussed in the selection of the jury. In view of that fact and the rebuke of the foreman when those subjects were mentioned in the jury room we could certainly not say the trial court abused its discretion in denying a new trial for those reasons.

■ With respect to the question of how much money a certain per cent of

disability would amount to the foreman testified he did not recall any such discussion. There was some testimony that as they would arrive at certain percentages of disability someone in the jury room would figure how much that would constitute in dollars and cents but we cannot say from the record such figures were made for the purpose of arriving at a certain amount in dollars and cents to be awarded appellee.

The trial court had an opportunity to observe the demeanor of the juror witnesses as they testified. As the trier of the facts, which of course he was on the question of jury misconduct, he could believe one witness to the exclusion of others and could accept part of the testimony of any one, or a number of witnesses and refuse part of it that did not comport with other testimony which he believed. It is uncontroverted in the case that appellee received an injury. Appellant's own doctor witness testified there was some incapacity. It is apparent the jury gave more credence to the extent of injury as testified to by appellee's doctor. They had the prerogative of believing one and disbelieving another. Without something in the record to show us that appellee received a much greater award than he was entitled to we cannot say as a matter of law that the jury misconduct testified about probably resulted in injury.

 Where a motion for a new trial is made on grounds of jury misconduct, and such motion was denied by the trial court and no findings of the trial court are made, the law requires us to consider the testimony of the jurors in the most favorable light susceptible from the standpoint of appellee. Roy L. Jones Truck Line v. Johnson, Tex.Civ.App., 225 S.W.2d 888. Under this test required by law we would have to say that the complaints, singularly, or a combination of all of them, did not constitute such error as to justify us in holding that the trial court abused its discretion in denying a new trial because of such alleged jury misconduct. It is note-worthy to observe that the foreman Hunter was unusually alert in keeping down extraneous discussion, which most certainly contributed toward preventing reversible error. We believe the cases above cited under this discussion of points four, five, six and seven would require us to hold that the trial court did not abuse its discretion in denying a new trial for alleged jury misconduct.

In its eighth point of error, appellant complains that the court erred in permitting appellee's counsel, over proper objections, to go into great length in cross-examining Doctor Lewis regarding disc symptoms and involvements. Doctor Lewis in his testimony on direct examination made several references to discs. This court, as have many others, has held that the right to cross-examine a witness is a substantial one, and it is error to so restrict it as to prevent the cross-examining party from going fully into all matters connected with the examination in chief. Pecos & N. T. Ry. Co. v. Porter, Tex. Civ.App., 156 S.W. 267.

In Grocers Supply Co., Inc. v. Stuckey, Tex.Civ.App., 152 S.W.2d 911, 915, the Galveston court, in discussing the latitude allowed in cross-examination, said:

"The only limitation is that of relevancy, and even this is not applied with the same strictness in a cross-examination as in the examination in chief."

This case further says:

"On the cross-examination of an expert counsel may be permitted, for the purpose of testing the skill and accuracy of the witness, to ask him hypothetical questions pertinent to the inquiry, whether the facts assumed in such questions have been testified to by the witness or not."

 It is also the law in our state that cross-examination, including conduct and extent thereof, is largely within the dis-

cretion of the trial judge, and his ruling will not be disturbed if not arbitrarily and unreasonably made. Story v. Partridge, Tex.Civ.App., 298 S.W.2d 662. We hold the judge of the trial court did not abuse his discretion in allowing the cross-examination complained about.

In its ninth point of error appellant complains that the jury's verdict is against the great weight and preponderance of the evidence. We feel it unnecessary to further extend this opinion by quoting the testimony of the several lay witnesses who testified favorably to appellee concerning his accident and incapacity therefrom. Even appellant's Doctor witness said:

> "Well, the only thing objective in the whole thing, actually, would be the muscle spasm and the shift of the spine. That can be simulated, of course, but I don't think it was so here."

Each of the doctors examined appellee only once. Appellee's doctor witness testified to facts which, if believed by the jury, constituted sufficient medical testimony to support the verdict of the jury and judgment of the court. In discussing the question of sufficiency of the evidence to support a jury finding, this court in True-love v. Truelove, Tex.Civ.App., 266 S.W. 2d 491, 499 (writ refused) has held that we must observe the following well-established rules of law, namely:

> "(1) every intendment from the evidence must be indulged in favor of the jury finding; (2) only testimony which tends to support the finding can be considered; and (3) conflicts must be disregarded and the testimony must be considered in a light most favorable to the finding. City of Austin v. Salazar, Tex.Civ.App., 241 S.W.2d 445."

This court has also said in this connection:

> "To test the sufficiency of the evidence to determine if it will support the trial court's findings, we must give

credence only to the evidence and circumstances favorable to the findings and disregard all evidence and circumstances to the contrary." Boston Ins. Co. v. Rainwater, Tex.Civ.App., 197 S.W.2d 118, 121.

Of course the last quoted case was one in which the court had passed on the facts but the same rule would apply to a jury trial.

Appellant contends the award of the jury and the judgment of the court was completely out of line with the facts of the case. Appellee, of course, takes exactly the opposite position. In looking at the entire record of the case we get the impression that the trial court tried the case as carefully as possible. We could not say when the evidence is viewed in the light most favorable to the judgment rendered, which is the guide we are required to go by, "That the jury's award is totally out of line" as urged by appellant.

Finding no errors such as to justify reversal, the judgment of the trial court is affirmed.