AUSTIN ROAD COMPANY, Appellant,

v.

Leo Patrick FERRIS and Butts Rental and Leasing, Inc., Appellees.

No. 17377.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 23, 1973.

Supplemental Opinion March 2, 1973.

Rehearing Denied March 23, 1973.

Brown, Crowley, Simon & Peebles, and M. Hendricks Brown, Fort Worth, for appellant.

Rex McEntire, Fort Worth, for appellees.

## OPINION

BREWSTER, Justice.

This is an appeal by the defendant, Austin Road Company, from a judgment rendered in favor of the plaintiff, Leo Ferris, in the amount of $80,108.21. The trial was before a jury.

The suit was for damages for personal injuries allegedly sustained by Ferris when his car was in collision at a Fort Worth street intersection with defendant's truck which was at the time loaded with 600 gallons of asphalt.

The jury found all of the liability issues against the defendant and those findings are not questioned on this appeal.

In line with the jury verdict plaintiff was awarded by the judgment (1) $25,000.-00 for loss of earning capacity in the future; (2) $10,000.00 for loss of earnings in the past; (3) $22,000.00 for physical pain and mental anguish in the future; (4) $10,000.00 for physical pain and mental anguish in the past; (5) $6,088.21 for doctor and hospital and dental bills plaintiff incurred in the past; and (6) $7,020.00 for future medical expense.

Defendant in his first four points of error attacks the first four jury findings which we have numbered one through four in the next paragraph above. Defendant urges a separate point as to each of the four findings, the point as to each of the findings being worded the same, to-wit: that there is no evidence or in the alternative wholly insufficient evidence to support the jury's finding and that such finding is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

In defendant's fifth point of error he contends that each of the jury findings that he complains of in his first four points, and which we have numbered one through four in the fourth paragraph of this opinion, is so excessive that the jury could only have been motivated by bias, prejudice, passion or some other improper motive in assessing each of such items of damages.

In his sixth point of error defendant says that if this Court does not reverse and render for the reasons urged in his first five points that we should require plaintiff to make a remittitur of a substantial amount with reference to each of the four complained of items of damages referred to in those five points.

■ The test which we are required to follow in determining the "no evidence question", which is a law question, is stated by the Supreme Court in Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950) as follows: "In seeking to determine whether there is any evidence to support the judgment and the . . . findings of fact incident thereto 'it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature.' "

There the evidence in the record must be viewed in the light most favorable to the verdict.

That test does not apply where the questions involved relate to whether the evidence was sufficient to support jury findings.

■ In determining the question of whether the evidence is insufficient to support the jury's answer to an issue or the question of whether the overwhelming weight and preponderance of the evidence is such that the jury's answer to a certain issue is unjust it is this Court's duty to consider all of the evidence in the record, including that which is contrary to the verdict. Fisher Construction Company v. Riggs, 160 Tex. 23, 325 S.W.2d 126 (1959).

■ The Court of Civil Appeals in passing on the questions referred to in the last paragraph above has the duty to consider and weigh all of the evidence, both for and against the issue, and to set the judgment aside if it concludes that the verdict is so contrary to the overwhelming weight of all the evidence as to be manifestly unjust, regardless of whether there is some evidence to support it. Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d 815 (1959).

The evidence showed that the plaintiff, Leo Ferris, was an attorney. He was 34

years old at wreck time. He was licensed to practice law in 1961. The wreck in question occurred on November 13, 1969, about 2½ years before the trial. On the occasion in question Ferris was alone in an Oldsmobile Cutlass when defendant's truck loaded with 600 gallons of asphalt ran into the left side of plaintiff's front left fender in a street intersection. Defendant's truck was heavy when loaded and it was driven into the intersection traveling at about 30 miles an hour and the brakes of that truck were not applied until it got within four or five feet of plaintiff's car. After striking Ferris' car the truck went on down the street 50 or 60 feet and Ferris' car was caused to spin around and further out into the intersection than it was when hit.

In the wreck Ferris' head struck some part of the car, his mouth hit the steering wheel, he was knocked unconscious and following the wreck the seat belt was putting a lot of pressure on him and at the scene following the wreck he was gasping for breath. He was carried to St. Joseph's Hospital and stayed from November 13, 1969, to November 16, 1969. The wreck occurred on a Thursday and beginning the following Monday he sat through a court trial for over three days, he having engaged another lawyer to do the trial work for his client, but the client insisting that he be present during the trial. At the hospital plaintiff's head, neck, arms, shoulders, mouth and eyes hurt. His teeth hit the steering wheel and dislodged an eight-unit permanent bridge that he had in his mouth, fracturing some of the porcelain facings and loosening the teeth the bridge was anchored to and fracturing one of the anchor teeth. The dentist visited plaintiff each day during his original stay in the hospital and found plaintiff to be suffering excruciating pain and numbness in his anterior nasal aperture and canine eminence. The bridge being knocked loose in the wreck caused his bite to be off and this produced pain. The dentist lacked the equipment in the hospital to there remove the bridge. He tried and much pain was caused so this

had to be delayed until Ferris got out of the hospital. The bridge was then cut out, a temporary one prepared, a root canal done on an anchor tooth that was fractured, and a new eight-unit permanent bridge was later constructed and installed.

Plaintiff had had some left ear trouble early in life but it had not bothered him in recent years much. He did have a scar on the left ear drum before the wreck. He also had before the wreck a mild divergence of his vision (cockeyedness) for which he had been operated in 1955 while in the Army.

His family doctor, Dr. George Moore, saw him in the hospital following the wreck and Ferris was semi-conscious and had blood in his left ear canal and tenderness to palpation of his neck and head. Dr. Moore's diagnosis was cerebral concussion (bruise on the brain), a myofascial strain, which is associated with neck injuries, and a hole in his left ear drum, his eyes were bothering him (double vision), and he had some amnesia. Dr. Moore arranged for his dentist, an ear specialist, and an opthalmologist to see Ferris.

Dr. O'Rear, the ear surgeon, on December 29, 1969, operated on Ferris' ear performing a tempanoplastic, which consisted of a graft onto the ear drum to repair the hole. The operation was performed in All Saints Hospital.

Plaintiff has been to Dr. Moore's office around 137 times between the wreck and the trial for examination and treatment, including physiotherapy treatments mostly for his neck pains and because he was losing sleep because of such pain. Two and one-half years after the wreck Ferris still has hearing trouble. He has a hearing loss in the left ear that is permanent. His general function has decreased because of brain damage he got in the wreck. Since he was over 30 when hurt it will take longer to get over the injuries to his neck and brain than it would if he was 19. The injuries he received will in the future probably cause a significant reduction in Ferris'

ability to do concentrated work. The injuries he received will cause plaintiff future pain and discomfort and that condition is permanent. Ferris will incur medical expense in the future in the treatment of his injuries. Such expense will probably be a minimum of two or three hundred dollars a year. The eye injury and eye operation, the ear injury and ear surgery, and the neck injury all caused Ferris pain. His physical activities, both at work and at play, will be limited because of his injuries.

Dr. Walter McKenzie, an opthalmologist, found 13 months after the wreck that Ferris had a divergency of his left eye— his eyes would not focus. His eye was turned out and he was having pain from the deviation, so he did muscle surgery on the eye on July 17, 1971. In his opinion the car wreck aggravated the trouble he had had with his eyes and caused deviation.

At time of the wreck Ferris had been practicing law for eight years. He was proficient at typing and was doing his own secretarial work when hurt. Since the wreck he has been unable to do the secretarial work and has had to hire a secretary to help him up to trial time. Following the wreck his head hurt around his eyes and he saw double a lot. Before the wreck he could, if he wished, voluntarily focus his eyes and see double. He only worked part time for many months after the wreck. He lost 2 to 3 full weeks from work after the ear operation. His bridge was finally replaced in March, 1970.

The four-hour ear operation he had in December, 1969, was painful and it caused his back to hurt for four or five months. From the wreck down until he had the July, 1971, eye operation he had continuous bad headaches around his eyes. His neck was still hurting at trial time. For a year and one-half after the wreck his neck and shoulders hurt constantly to where he could not straighten up.

In 1968 his gross earnings were $32,000.-00. In 1969 he grossed $25,046.80. In 1970 he grossed $39,610.00. In 1971 he grossed $42,502.00.

His injuries put him pretty much out of business from November 13, 1969, to January 1, 1970. During the first six months after the wreck he only averaged working half the time. During the next six months, from May, 1970, to the time he had his eye operation in July, 1971, he only had to miss from 20% to 25% of the time from his work. He was out of the office a month for his eye surgery. He could not use his eye for a long time after that. He, at trial time, had employed a secretary and another person to do the work that he normally did. At trial time he was able to come to the office 90% of the time. He hired a secretary through October, 1968, and paid her a salary of $3,014.00 that year. He did not have one from October, 1968, to November 13, 1969, and in 1969 he only paid $272.63 for secretarial work. After being hurt Ferris had to hire a secretary to do the secretarial work that he had been doing himself and in 1970 her salary was $3,546.77. In 1971 he had to pay $4,164.00 for such salaries.

At trial time it was still very difficult for Ferris to read for the eye operation has not been completely successful. His neck still hurts and his hearing is impaired. It is hard for him to try a case now for it is hard for him to hear low-talking people.

There was evidence introduced to the effect that injuries sustained in the wreck in question caused plaintiff's troubles listed above.

Evidence also showed that he was hospitalized on three different occasions in the treatment of his injuries and that he sustained the following expenses in the treatment of such injuries: $1,459.00 to Dr. Moore for approximately 137 trips to the Doctor's office for examination, treatment or physiotherapy; bill to St. Joseph Hospital for initial hospitalization, $196.30 on November 13, 1972; ambulance bill, $20.-00; Dr. O'Rear's charge for ear surgery, $532.00; $408.47 to All Saints Hospital for

hospitalization during ear surgery; charge for anesthetist re ear operation, $102.00; $45.00 to Dr. Binion (opthalmologist) for treating eyes; $371.49 to Dr. McKenzie for eye operation on July 17, 1971; $282.45 to St. Joseph for hospitalization re eye operation; and $21.50 for x-rays. There was evidence that all of these expenses were necessarily incurred in the treatment of injuries Ferris sustained in the collision and that the charges were reasonable. There was also evidence that Ferris necessarily incurred dental services in the treatment of injuries he sustained to his teeth and damage done to a bridge, and that the $2,650.00 charge for such dental services was reasonable and the services necessary.

There is other evidence in the record bearing on the issues being discussed, but we will not attempt to set it all out here.

■ On examining the evidence in the record, it is apparent to us that defendant's contentions that there is "no evidence" to support the four jury findings being attacked in his first six points are without merit.

We also conclude and hold that there was sufficient evidence in the record to support each of the jury's four findings that are attacked by defendant's first four points and that none of those four findings are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

■ With reference to the finding of $10,000.00 for loss of earnings to time of the trial, there was evidence that Ferris was proficient as a typist and that by doing his own secretarial work he was getting to keep, at the time of the wreck, around $3,500.00 a year of his gross earnings that he would not have gotten to keep if he had not done his own secretarial work. There was evidence that by reason of his injuries he, from November 13, 1969, to trial time, had to hire a secretary to do this secretarial work formerly done by him. During the 2½ years between

wreck time and trial time the jury could have believed that plaintiff lost close to $10,000.00 in earnings from this item alone.

For the reasons stated we overrule defendant's first four points.

The courts have laid down a number of rules that are applicable in determining whether or not a jury verdict is excessive.

■ The following is from 17 Tex. Jur.2d 408, Damages, Sec. 335: "In any action to recover damages in which the law furnishes no precise legal measure for their recovery, and they are unliquidated, the amount to be awarded rests primarily within the discretion of the jury, and unless the award is so large as to indicate that it was the result of passion, prejudice, partiality, or corruption, or that the evidence had been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal."

A large number of cases are there cited that support this statement.

■ And an appellate court is not permitted to set aside a jury's award of damages merely because the members of that court would have awarded a lesser amount had they been sitting as the jury. Bill Hendrix Auto Parts v. Blackburn, 433 S. W.2d 237 (Houston Tex.Civ.App., 14th Dist., 1968, no writ hist.); Dallas Transit Company v. Newman, 380 S.W.2d 818 (Dallas Tex.Civ.App., 1964, err. dism.).

After stating the controlling law relating to questions of excessiveness of a verdict to be as is stated in the quote from Texas Jurisprudence above, the court in Green v. Rudsenske, 320 S.W.2d 228 (San Antonio Tex.Civ.App., 1959, no writ hist.) said the following at page 235: "The measure of damages in a personal injury case cannot be measured by a mathematical yardstick. Each case must be measured by its own facts and considerable discretion and latitude must necessarily be vested in the jury. . . . And in determining whether or

not a verdict is excessive, the evidence in support of the award must be viewed, of course, in the light most favorable to the award."

■ We have carefully examined the evidence and the entire record that is before us in this case and find nothing there to indicate to us that the jury's award for the four items of damage that defendant complains of in its first six points is so excessive as to show bias, prejudice, passion or any other improper motive on the part of the jury. When the evidence is examined we cannot say that the amount of these awards shocks the conscience of the court.

We hold that the verdict is not excessive as to the four items of damage involved in defendant's first six points and that a remittitur as to those items of damage should not be required. Defendant's fifth and sixth points of error are overruled.

We are convinced that this holding finds support in the following cases: Bluebonnet Express, Inc. v. Foreman, 431 S.W.2d 45 (Houston Tex.Civ.App., 14th Dist., 1968, no writ hist.) (an award of $74,850.00 to an attorney); Missouri Pacific Railroad Company v. Handley, 341 S.W.2d 203 (San Antonio, Tex.Civ.App., 1960, no writ hist.) (an award of $76,860.00 to a switchman); Port Terminal Railroad Association v. Macaluso, 450 S.W.2d 873 (Houston, Tex. Civ.App., 1st Dist., 1970, no writ hist.) ($90,000.00 for pain and suffering, past and future and loss of wages, past, and future earning capacity); Fort Worth and Denver Railway Company v. Coffman, 397 S.W.2d 544 (Fort Worth, Tex.Civ.App., 1965, writ dism.) ($160,000.00 to freight conductor); and Missouri Pacific Railroad Co. v. Miller, 426 S.W.2d 569 (San Antonio, Tex.Civ.App., 1968, no writ hist.) ($200,000.00 award to a railway brakeman).

■ Defendant's point of error No. 7 attacks the jury finding of $7,020.00 for future medical care and treatment of plaintiff. The contention is that there is "no evidence" and in the alternative insufficient evidence to support the finding and that it is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and, in the alternative, that a remittitur with reference to that finding should be required.

We overrule this point.

In this connection defendant says there was no proof of life expectancy. As to the effect of this omission in the evidence in a suit for damages for personal injuries the court in the case of Chemical Express v. Cole, 342 S.W.2d 773 (Dallas, Tex.Civ. App., 1961, ref., n. r. e.) said the following at page 778: "Furthermore, it has been held that when injuries are permanent and the age of the injured person is given, a jury may reach its own conclusions as to the probable duration of life from their knowledge of such things and from evidence as to the party's health, physical condition and such other facts as are before it, though no evidence of life expectancy is presented. (Cites cases.)"

Dr. Moore testified in substance that plaintiff will require future medical care in the treatment of injuries he received in the wreck; that he will have future pain and discomfort from those injuries; that the situation is permanent; and that Ferris will probably have in the future a minimal expense for medical care in the treatment of his injuries of two to three hundred dollars per year.

Defendant says that his analysis is that the jury awarded $200.00 a year for 36 years in reaching the figure it did on this item.

The evidence in the record was sufficient to support the jury's award on this item of future medical expense. See Chemical Express v. Cole, supra, (Syl. 7).

■ Defendant's point of error No. 11 attacks the jury award of $2,650.00 for the dental services performed by Dr. Suges

in treating Ferris after the wreck. The attack is on the ground that there is no evidence and insufficient evidence to support the jury's finding and that the finding is so against the weight and preponderance of the evidence as to be manifestly wrong and in the alternative a remittitur should be required.

The evidence showed that Ferris had an eight-unit bridge in the front of his mouth at time of the wreck. The wreck made loose the teeth supporting the bridge, fractured some of its facings, dislodged the bridge, caused excruciating pain in his mouth and numbness in a part of his face area. It knocked his bite off and this caused pain and it fractured some of his teeth.

The dentist first relieved the pain. He went to the hospital several times trying to get the bridge out but could not because he did not have the tools and it caused too much pain. He had to then determine what had to be done. He ended up taking impressions, performing a root canal on a supporting tooth that was fractured, he had to cut out the old bridge in sections in order to remove it, he made Ferris a temporary bridge to use while he was building a permanent one, he then built an eight-unit permanent bridge that was not acceptable to Ferris (was off color), and he then built another bridge and after a long period of time got it back into his mouth.

Dr. Suges testified that Ferris was hard to work with and that Ferris insisted that Dr. Suges set his charge for his services at the beginning, for the whole job, with the understanding that Ferris wanted the best, and that the dental work was not necessarily to be done during the dentist's office hours, but was to be done at times when it was convenient to Ferris. The dentist was to make himself available to work on Ferris at times when Ferris wanted to be worked on, which was at times in the evenings.

The dentist testified that he and Ferris then agreed, before any work was done, on a charge of $2,650.00 for the total job to be performed under those circumstances. The price was agreed on before the dentist knew how extensive the dental work might be that he would be required to do for Ferris. He thought the charge was reasonable due to the unusual circumstances that were involved. He testified that if the average patient came to him for the same work that he did for Ferris that the price for the same work would possibly be $1,000.00 less than Ferris was charged, because the circumstances would be different.

There is no question but what Dr. Suges would in law be entitled to recover from Ferris the contract price the parties agreed upon for the dental work that he did for Ferris. But that contract price is not necessarily the amount that Ferris can recover from the tort feasor who caused the injury. This is obvious because were it not so Ferris and Dr. Suges could have agreed on $10,000.00 for the work and then charged that sum against the tort feasor. From the tort feasor (the defendant here) Ferris can only recover the reasonable cost of dental services that are reasonably necessary to repair the damage done by the wreck.

We are convinced and hold that the jury's award to Ferris of $2,650.00 for the dental services involved here is excessive by $1,000.00. In this connection we will require a remittitur of $1,000.00. Other than that we overrule defendant's point of error No. 11.

Defendant's point No. 13 is another "no evidence", insufficient evidence, and against the overwhelming weight and preponderance of the evidence point, just the same as are all the points we have heretofore discussed. It attacks the jury's award of $1,459.00 as being a reasonable charge for the services reasonably and necessarily rendered by Dr. George H. Moore in the treatment of injuries plaintiff got in the wreck. It also says in the alternative that a remittitur should be required.

We overrule all phases of this point.

The evidence showed that this doctor was in attendance on Ferris during his initial hospital stay and that Ferris went to his office for treatment or examination about 137 times between the time of the injury and the time of the trial. There is nothing in the evidence to indicate to us that this finding is excessive or that it was brought about by improper motives of the jury. The evidence supports the finding.

■ In defendant's point of error No. 8 he contends that the court erred in sustaining plaintiff's motion in limine and in not allowing defendant to cross-examine Ferris as to whether it was not true that he was losing money or law practice because the public had read in the newspapers that before the wreck he had been charged with extortion and an attempt to get a citizen to pay him $1,500.00 and that he threatened to have something happen to the citizen's wig shop if he was not paid. The defendant contended that when plaintiff testified that he was losing money in his law practice because of the accident that defendant was entitled to cross-examine him about the effect of the newspaper articles on his practice.

Defendant's point of error No. 9 is related to its point No. 8 and contends that after plaintiff argued to the jury that the primary reason for the large drop in his income was due to the injuries he got in the accident, that the court then erred in overruling defendant's motion to let it reopen the case and interrogate Ferris about the newspaper articles' reference to Ferris being charged with extortion.

During the trial it was plaintiff's contention that injuries he got in the wreck resulted in his losing money in his law practice.

The plaintiff made a motion in limine, out of the jury's presence, after defendant started to develop the matter, stating that in 1968 a criminal complaint charging Ferris with extortion was filed against him, that he was never convicted and was later no-billed on the charge by the grand jury, and plaintiff moved that defendant be instructed not to go into the matter.

When a bill of exceptions was made Ferris admitted that it was true that in June, 1968, an article appeared in a Fort Worth paper headed, "Extortion Charged To Ex-D.A. Aide", referring to him, and he admitted that another article appeared in the newspapers the next day with reference to him being released on bond. He testified that after these articles were published in 1968 his business did not fall off. The defendant then moved that the court permit him to cross-examine plaintiff about the stories because it was relevant to the question of whether any earnings he lost were due to injuries he got in the wreck or whether such loss was due to the adverse publicity plaintiff received in the newspaper stories.

The trial court granted plaintiff's motion in limine and overruled defendant's motions relative to this evidence, and instructed defendant to make no attempt to develop the matter before the jury.

In so ruling the trial court stated that he had concluded that the evidence was not admissible—"that it would be so highly prejudicial to Mr. Ferris that there is no way that I could instruct the jury as to the purpose for which the testimony would be offered. I think they would consider it for all purposes."

We are convinced that the trial court's rulings complained of in defendant's points Nos. 8 and 9 are correct and we overrule both of those points.

If the evidence referred to had been admitted, the defendant would have been thus allowed to prove to the jury that on a prior occasion the plaintiff had been charged with a crime that he has never been convicted of and in connection with which charge the grand jury later no-billed him.

■ In a civil suit proof that a person has been charged with commission of a

criminal offense is not admissible unless the person admits he is guilty of the charge. The record here does not show that plaintiff made such an admission. See 62 Tex.Jur.2d 260, Witnesses, Sec. 279 (and cases therein cited); General Ins. Corp. v. Handy, 267 S.W.2d 622 (San Antonio, Tex.Civ.App., 1954, ref., n. r. e.); and United Employers Casualty Co. v. Curry, 152 S.W.2d 862 (Galveston, Tex.Civ. App., 1941, no writ hist.).

General Insurance Corporation v. Handy, supra, was a workmen's compensation case involving a back injury and in which case plaintiff contended he had been unable to do hard work since being hurt. The Insurance Company sought to question the plaintiff as to his activities since the injury in selling marijuana and other narcotics in order to rebut plaintiff's claim that he was disabled from performing any kind of labor. The trial court excluded such evidence and the Insurance Company contended this was error. As to such contention the court said at page 624 of 267 S.W.2d of the opinion the following: "It would have been very prejudicial to appellee for appellant to have questioned him as to whether or not he had engaged in the sale of narcotics and in this manner bring out the fact that he had been charged . . . with trafficking in narcotics, when at that time he had not been tried and convicted of such an offense. We overrule this contention."

The case of United Employers Casualty Co. v. Curry, supra, was also a workmen's compensation case. Plaintiff there claimed that an injury had totally and permanently disabled him. Defendant sought to prove that plaintiff, several years before the trial, had been indicted for murder and theft. The record showed that he was acquitted of both charges. Defendant offered the evidence to show that plaintiff was not totally and permanently disabled as he was contending and the trial court excluded the evidence. This ruling was upheld on appeal.

The real basis of the complaints made in points 8 and 9 is defendant's contention that the trial court erred in restricting defendant's cross-examination of the plaintiff in the respects we have mentioned.

█ Relative to such matters Texas courts have laid down the rule that the scope and extent of cross-examination of a witness is a matter that lies largely within the discretion of the trial court and its rulings thereon will not be disturbed unless an abuse of discretion is shown. Texas Employers' Insurance Ass'n v. Garza, 308 S. W.2d 521 (Amarillo, Tex.Civ.App., 1957, ref., n. r. e.). For many other cases holding this same way see Texas Digest, Witnesses, █ and Texas Digest, Appeal & Error, █

We are also convinced that the evidence that is involved here falls in about the same category as does evidence offered in a personal injury case tending to prove that a plaintiff is claims-minded and that the same rule governing the admissibility of that type evidence should be applied to the evidence involved in the two points of error being here discussed.

█ The general rule is that in a personal injury case evidence that a plaintiff is claims-minded is not admissible. The reason for such rule is stated as follows in Vol. 2, Texas Law of Evidence (Second Edition) McCormick and Ray, Sec. 1526 at page 375: "But where the defendant merely seeks to show that the plaintiff is a chronic personal injury litigant the evidence will be excluded on the theory that its slight probative value is outweighed by the danger of unfairly prejudicing the claim of an innocent litigant."

Cases holding in line with that text are Martinez v. Williams, 312 S.W.2d 742 (Houston, Tex.Civ.App., 1958, no writ hist.); Southern Truck Leasing Company v. Manieri, 325 S.W.2d 912 (Houston, Tex.Civ.App., 1959, ref., n. r. e.); and

Brinkley v. Liberty Mutual Insurance Company, 331 S.W.2d 423 (Texarkana, Tex. Civ.App., 1959, no writ hist.).

In United States v. Pledger, 409 F.2d 1335 (5th Cir., 1969) the court held in substance that the scope and latitude of cross-examination should be left to the discretion of the trial judge and that in instances where the probative value of the evidence sought to be introduced is far outweighed by the possibility that the jury might make impermissible use of the testimony then such evidence should be excluded.

The case of Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) announces the same rule. The holdings in the two cases which we have last cited above make it clear that this rule of exclusion is not limited just to evidence offered in personal injury cases tending to show that a plaintiff is claims-minded. It applies to other types of evidence as well.

The evidence involved in defendant's points Nos. 8 and 9 is not admissible for the same reasons. We are convinced that the probative value of the evidence that defendant sought to introduce by cross-examining Ferris as to the criminal charge that was made against him and as to which charge he was later no-billed, was far outweighed by the probable wrongful use that the jury would make of such evidence. We hold that the trial court properly excluded the evidence and that it did not abuse its discretion in excluding it.

■ Defendant's point of error No. 10 contends that the court erred in not letting its counsel cross-examine the dentist, Dr. Suges, after he had testified that his dental charge was $2,650.00, if it was not true that the professional committee of the dental association had not suggested to him that he resubmit a fee and that the new fee be realistic and that he should compare his fees with the Texas Dental Journal.

Defendant's counsel claims that this cross-examination was material with reference to the reasonableness and necessity of the dental bill.

We hold that it would have been improper to have permitted such cross-examination.

If defendant had desired he could have called members of such Dental Association Committee as witnesses, and if they proved to be qualified to express opinions as to the reasonableness of the charges made, then such testimony would have been admissible. But conclusions and opinions of such committee members expressed out of court are not proper evidence in a case such as this.

The trial court did not abuse its discretion in refusing to permit the cross-examination complained of in point of error No. 10 and we overrule that point.

■ Defendant's point of error No. 12, contends that the court erred in not permitting his counsel to cross-examine Dr. George Moore concerning a case and the nature of such case that Ferris, as an attorney, had tried in behalf of Dr. Moore for a week. He contended that such evidence tended to show bias and prejudice that Dr. Moore had in favor of Ferris and that it was relevant to the testimony the doctor had given concerning Ferris' injuries and the fees Dr. Moore charged.

We overrule this point.

When a bill of exception as to this point was made the evidence showed that Dr. Moore's ex-wife had sued him seeking to prove that they were common-law man and wife, seeking a divorce, and custody of their child. The trial lasted one week. Dr. Moore was appreciative of the services performed by Ferris for him in that trial.

**76**

The trial court did not abuse his discretion in excluding that evidence during the cross-examination of Dr. Moore. The type of case that Dr. Moore and his ex-wife had was not relevant to the issues involved in this case.

■ We heretofore sustained in part defendant's point of error No. 11 in that we held that the dental bill of $2,650.00 was excessive in the amount of $1,000.00 and that a remittitur in that amount would be required. If appellee will file a remittitur of $1,000.00 plus accrued interest on that amount within fifteen days from this date, the judgment in this case in favor of Leo Ferris and against Austin Road Company will be affirmed for $79,108.21, together with interest thereon at the rate of six per cent per annum from June 5, 1972. Unless such remittitur is filed, we shall reverse the judgment and remand the cause for another trial.

SUPPLEMENTAL OPINION

Appellee, Ferris, has filed herein a remittitur of $1,000.00 plus interest that has accrued on said amount.

Therefore the judgment in favor of Leo Patrick Ferris and against Austin Road Company is hereby reformed to allow a total recovery of $79,108.21, plus interest thereon at six per cent (6%) per annum from June 5, 1972. The judgment in favor of Butts Rental and Leasing, Inc. and against Austin Road Company for $1,019.-08 plus interest at the rate of six per cent (6%) thereon from June 5, 1972, is affirmed. See Chemical Express v. Cole, 342 S.W.2d 773 (Dallas, Tex.Civ.App., 1961, ref., n. r. e.).

Costs herein are taxed one-half against Austin Road Company and the other one-half against the plaintiff, Leo Ferris.

As above reformed the judgment is affirmed.