## TEXACO COUNTRY CLUB v. WADE et al.
### No. 11365.

Court of Civil Appeals of Texas. Galveston.
May 7, 1942.

On Filing of Remittitur May 28, 1942.

Rehearing Denied June 18, 1942.

Sewell, Taylor, Morris & Connally, of Houston (Walton D. Taylor and Ben G. Sewell, both of Houston, of counsel), for appellant.

Cooper K. Ragan and Allen, Helm & Jacobs, all of Houston (Cooper K. Ragan and Shirley M. Helm, both of Houston, of counsel), for appellees.

MONTEITH, Chief Justice.

This is an appeal in an action brought by J. B. Wade in his own behalf and as next friend of his minor son, Billy Drew Wade, to recover damages alleged to have been sustained by the minor appellee from coming in contact with a guy wire charged with electricity located on a portion of the premises of appellant, Texaco Country Club.

Appellant is a non-profit corporation maintained by the employees of the Texas Company as a golf club. The minor, Billy Drew Wade, ten years of age, went with his older brother on the morning of June 18, 1940, to the club premises to secure employment as a caddy. While walking around the club grounds before any golf players had arrived, the minor appellee placed his hand on a guy wire, which extended from the top of a light pole to the ground, and received an electrical shock. The current in the guy wire was caused by a short circuit in an electric switch attached to the side of the pole.

Appellees alleged numerous specific acts and omissions on the part of appellant and its employees claimed to amount to negligence proximately causing the injuries to the minor appellee.

Appellant alleged various acts and omissions on the part of the minor appellee which it alleged amounted to contributory negligence.

In answer to special issues submitted, the jury found that appellant had been guilty of numerous negligent acts and omissions, including findings that it had failed to have the guy wire in question properly insulated; that the switch box on said light pole was defective, and that appellant had failed to provide proper inspection for it, and that all of such acts on the part of appellant were proximate causes of the injuries to the minor appellee.

The jury further found that Billy Drew Wade was upon that portion of the premises of the Country Club in the vicinity of the light pole in question as an invitee under invitation, either express or implied, of appellant Country Club.

It awarded Billy Drew Wade damage for physical pain suffered by him, from the time of the electric shock to the date of this trial, in the sum of $4,000; for physical pain, which in reasonable probability he would suffer in the future beyond the date of the trial, in the sum of $4,000; for mental suffering from the time of the electric shock down to the date of the trial in the sum of $3,000; for mental suffering he would suffer in the future beyond the date of the trial in the sum of $4,000; and for the cash value of such sums of money as he would in reasonable probability lose in the future, after reaching his majority, because of his diminished capacity to work and earn money after his majority, as a direct result of his injuries, in the sum of $5,000.

It awarded J. B. Wade the sum of $135 for the reasonable value of medical services rendered Billy Drew Wade prior to the trial.

Based on the answers to such special issues, the trial court entered judgment against appellant and in favor of appellee Billy Drew Wade in the sum of $20,000, and in favor of J. B. Wade in the sum of $135.

Appellant contends that the court erred in refusing to instruct a verdict in favor of appellant, because, under the undisputed

evidence, the minor appellee, Billy Drew Wade, did not occupy the status of an invitee on that portion of the premises of the appellant where he was alleged to have been injured.

This contention cannot be sustained. The record shows that the minor appellee went to the club premises, where he had caddied on other occasions, to secure employment as a caddy. The group of trees in which the wire in question was encountered stood on a part of the golf course 50 or 75 feet from the first tee. The manager of the Country Club testified that he encouraged caddies to come to the club so that the members might enjoy the privileges of the club; that the boys were required to wait around in the vicinity of the first tee until they were given a golf bag to carry, and that there was no rule requiring them to remain in any particular place, but that until the caddies received an assignment they did pretty much as they pleased.

The test of whether one on premises used for public purposes is an invitee at the exact place of injury seems to be whether the owner of the premises ought to have anticipated the presence of a member of the public at this point on the portion of the premises devoted to public use. It is not essential that the owner of premises should have foreseen the precise injury to any particular individual, but merely that some like injury might, and probably would, result to some one lawfully on the premises. Texas Public Service Co. v. Armstrong, Tex.Civ.App., 37 S.W.2d 294, error refused.

45 Corpus Juris, page 830, § 240, lays down the following rule with reference to the duty of owners in this regard: "The duty to keep premises safe for invitees does not necessarily apply to the entire premises. It extends to all portions of the premises which are included within the invitation, and which it is necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended, and at which his presence should therefore reasonably be anticipated, or to which he is allowed to go." Southwestern Portland Cement Co. v. Bustillos, Tex.Civ.App., 216 S.W. 268, conforming to opinion of the Supreme Court in 211 S.W. 929.

In the recent case of Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d

1073, 1074, our Supreme Court, speaking through Chief Justice Alexander, in discussing the responsibility of the owner of premises to one on the premises as an invitee, held: "It is settled by the law of this State that if the plaintiff was on the premises as an invitee, it was the defendant's duty to exercise ordinary care to keep its premises in a reasonably safe condition, so that the plaintiff would not be injured; and that if the defendant failed so to do, it would be liable for the damages proximately caused thereby."

Under above facts, it being undisputed that the minor appellee was an invitee upon certain portions of the premises, we think that it must be conceded that he was an invitee on that portion of the golf course where he was injured.

■ Appellant assigns error in the refusal of the trial court to define the terms "express invitation" and "implied invitation", and that the trial court erred in submitting special issue No. 19 over its objection that the issue as framed was duplicitous, in that it embraced both an express and an implied invitation. This contention cannot be sustained.

Special issue No. 19 complained of, and the definition of "invitee" submitted in conjunction therewith, read: "Do you find from a preponderance of the evidence that Billy Drew Wade was upon that portion of the premises of the Country Club in the vicinity of the light pole in question as an invitee, under invitation, either express or implied, of the defendant Country Club, on or about the 18th day of June, 1940? Answer 'we do' or 'we do not'. You are instructed that an invitee is one on the premises of another with the owner's knowledge or consent and to engage in an undertaking for the mutual benefit of the said owner and the one to be employed."

The owner or occupant of premises owes the same duty to exercise ordinary care for the safety of persons upon his premises whether they are there by express or implied invitation. It is held that there is no practical difference between the one situation and the other, the same duty is due from the owner of the premises to the victim in either case.

Whether the minor appellee in the instant case was on defendant's premises by express invitation or implied invitation was incidental and immaterial to the ultimate issue. Houston Belt & Terminal R. Co.

v. Rogers, Tex.Civ.App., 44 S.W.2d 420; Snelling v. Harper, Tex.Civ.App., 137 S.W. 2d 222; Mack v. Houston, E. W. T. R. Co., Tex.Civ.App., 134 S.W. 846; Johnson v. Atlas Supply Co., Tex.Civ.App., 183 S.W. 31; Esthay v. Sherman, Tex.Civ.App., 135 S.W.2d 174; 30 Tex.Jur. 862.

Since it was immaterial whether the invitation from appellant to the minor appellee was express or implied, we think that no error was committed by the trial court in refusing to define either term and the issue as given, eliminating immaterial matters, submitted to the jury the single ultimate issue as to whether Billy Drew Wade was upon that portion of the premises of the Country Club in the vicinity of the light pole and on the occasion in question as an invitee. 41 Tex.Jur. 1107 to 1109; Wilson v. Hagins, Tex.Civ.App., 25 S.W.2d 916; Sweetwater Progressive Mutual Life & Accident Ass'n v. Allison, Tex.Civ.App., 22 S.W.2d 1107.

Appellant assigns error in the action of the trial court in overruling its objection to the term "invitee" given in connection with said special issue No. 19, over its objection that the definition given in the court's charge was confusing and meaningless and so vague, general and indefinite as to not properly apprise the jury as to what is meant by the expression "and the one to be employed".

Appellees pled that on or about the 18th day of June, 1940, the minor plaintiff, Billy Drew Wade, was on the premises of the defendant waiting to be called to caddy for some player using the golf course maintained and operated by the defendant. The minor appellee testified on direct examination that he was upon appellant's premises waiting to be employed as a caddy. This evidence was corroborated.

Rules of Civil Procedure, rule 277, provides: "In submitting special issues the court shall submit such explanatory instructions and such definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

■ In Texas & Pacific R. Co. v. Gillette, Tex.Civ.App., 100 S.W.2d 170, 175, it is held: "The sufficiency of explanations and definitions as to form is largely in the discretion of the trial court, and the test is the reasonable clearness of the definitions to enable an understanding of the word by the jurors."

■ "The one important office of a definition or explanation is to make clear and understandable the issues or instructions which it accompanies. When this end has been accomplished, the demands of the statute for explanations and definitions have been fully met, whatever the form may be." Speer in Law of Special Issues in Texas, Section 54.

■ It is apparent from a reading of the instruction in question · that the ˈtrial court, in submitting special issue No. 19, asked the jury if the plaintiff was on the premises of appellant as an invitee on the occasion in question, ˈand that he told the jury in affirmative form what an invitee was. Appellant's contention in this regard must be overruled.

Appellant contends that the testimony of appellee's only medical witness, Dr. James Brown, concerning the permanency of the minor appellee's injuries, to the effect that he stood "a two to five per cent chance of having permanent disability," was wholly incompetent, and that its erroneous admission over the appellant's objection materially prejudiced the appellant and unquestionably contributed to the rendition of a verdict which was outrageously excessive.

Dr. James Brown, the only medical witness offered by appellees, testified that .he had not examined the minor plaintiff since October 19, 1940, three months after his alleged injury and seven months prior to the trial, and that he had made no additional physical examination of him prior to the trial. The record shows that Dr. Brown came from Pensacola, Florida, to testify in behalf of appellee. He testified as to his objective and subjective findings disclosed by his examination of the minor appellee, but that he had not seen the minor appellee· enough to tell whether he was normal or not. He testified: "In my opinion, there is permanent damage to his brain, but I cannot say that he is permanently injured for life, because three years have not elapsed since his injury, and I cannot say that he will have any permanent damage anyway so far as anybody can tell. I cannot say at the present time."

In answer to the question: "In all reasonable probability, will this injury be accompanied by both physical and mental pain and suffering in the future?" He responded: "At the time I saw this individual last, it was my opinion that the individual was suffering from pain and disability as a result, but I could not say that it would be permanent, because, as · I · said before, I would not want to make a definite statement· as regards the permanency of the thing before three years had elapsed after the injury. If at the end of one year the pain had not disappeared, there would be a good chance for it to continue over quite a long period of time, and possibly be permanent."

The court instructed the jury to disregard that portion of the answer which dealt with possibility.·

In answer to the question as to whether, in his opinion, the minor appellee would suffer physical pain and physical and mental suffering in the future in all reasonable probability, he answered: "In my opinion, this boy stands a two to five per cent chance to have permanent disability * * * . In all reasonable probability this individual has a two to five per cent chance to have his disabilities, of which we have spoken already, after three years. If they are present after three years, we will consider them permanent. In my opinion, that is as good an answer as you can get to that question."

■ The burden rests upon the plaintiff in an action for personal injuries to establish the nature, extent and probable permanency of the injuries by a fair preponderance of the evidence. It is his right to have the probable future consequences of the injury placed before the jury for their consideration in fixing the amount of his damages, but it is not sufficient to show that such consequences may occur; the evidence must show a reasonable probability of the occurrence of future ill effects of the injury (13 Tex.Jur. 369), and that, like other witnesses, the experts must confine their opinions to the realm of probability; conjecture, speculation or surmise being inadmissible for want of probative value. 19 Tex.Jur. 36.

In the case of St. Louis Southwestern Ry. Co. v. Moore, Tex.Civ.App., 161 S.W. 378, it was held that where bruises received by appellant were slight and at the time of trial he was entirely well and no possible danger of cancer was apparent or probable, testimony that a slight wound or bruise has sometimes · caused a cancerous wound and that such wound sometimes results in death, was erroneously admitted as being too speculative.

In the instant case, Dr. James Greenwood, Sr., testified that after a careful and thorough examination of the boy on March 5, 1941, over four months after Dr. Brown's last examination, he could not find anything wrong with him and, in effect, that the minor appellee was, in every respect, a normal, healthy boy.

The minor appellee's school principal and school teacher testified that he appeared to be a normal, vigorous boy in every respect, and that he showed a higher intelligence quota after the date of his alleged injury than before. Dr. Brown testified that upon his last examination of the boy, seven months prior to the trial, all objective symptoms of any injury had disappeared and that he believed that "as far as objective examination goes, he is normal", and he testified that it would be impossible to determine whether he had sustained permanent brain injury until three years from the date of the injury. He was permitted to testify, over appellant's objections seasonably urged, that the minor appellee had a two to five per cent chance to have his disabilities after three years.

The effect of this testimony was that there was two to five per cent of the people who had sustained injuries similar to those sustained by the minor appellee who were permanently injured and suffered mental and physical pain, but that 95 to 98 individuals out of 100 sustaining injuries similar to those sustained by the minor appellee would suffer no disability after a lapse of a 3-year period from the date of the injury.

Under this state of facts, we think that that portion of the jury's verdict which awarded the minor appellee $4,000 for future physical pain, $4,000 for future mental suffering, and $5,000 for future diminished earning capacity, not having been based on competent testimony, should not be allowed to stand. It is, therefore, our duty to reverse the judgment of the trial court in so far as the above items are concerned, unless before the expiration of 20 days from the date of rendition of this judgment appellees file a remittitur of the sum of $13,000 in this court.

In the event such remittitur is filed, the judgment of the trial court will be reformed and affirmed so as to allow the minor appellee the recovery of the sum of $7,000, the recovery of the adult appellee remaining unchanged. Should the remittitur not be filed, the judgment of the trial court will be reversed and the cause remanded for a new trial for the reasons above stated.

Reversed and remanded, unless the sum of $13,000 remittitur is filed within 20 days.

On Filing of Remittitur.

It appearing that appellees have filed the remittitur in the sum of $13,000 required by us in our original opinion to avoid reversal of the judgment herein, the judgment of the trial court is here now accordingly reduced and as so reduced is affirmed.

Reformed and affirmed.