**MISSOURI PACIFIC RAILROAD CO.,**
**Appellant,**

v.

**Jack Wesley MILLER, Appellee.**

**No. 14654.**

Court of Civil Appeals of Texas.

San Antonio.

Feb. 28, 1968.

Rehearing Denied April 3, 1968.

Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, for appellant.

Rice, Whitehead & Seely, San Antonio, Helm, Jones & Pletcher, Houston, for appellee.

BARROW, Chief Justice.

Appellee brought this suit against appellant to recover damages under the provisions of the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) for personal injuries sustained on August 8, 1965. Judgment was entered on the jury's verdict whereby appellant recovered the sum of $244,000.00.[1] Appellant's motion for new trial was overruled after appellee filed a suggested remittitur of $44,000.00. Appellant has duly perfected its appeal from the reformed judgment of $200,000.00 and asserts five points of error.

The first point relates to the action of the court in sustaining appellee's motion in limine and excluding evidence of appellee's felony conviction in 1958 for accessory to burglary, for which he received a sentence of two years probation. At that time he was nineteen years of age. He was twenty-eight years old on March 20, 1967, when this case was tried. The applicable rule is stated in Travelers Ins. Co. v. Dunn, 383 S.W.2d 197 (Tex.Civ.App.—El Paso 1964, writ ref'd n. r. e.), as follows: "There is no dispute but that the conviction of an individual of a crime involving moral turpitude can be admitted for the purpose of impeachment or to attack the credibility of a witness, but such is not admissible if it is too remote. The cases we have examined all indicate that this is a matter resting largely on the discretion of the trial court, which must take into consideration all the facts and circumstances present at the time the testimony is proffered. His decision to admit or exclude the testimony because of

---

1. The jury awarded $1,000 for past medical expenses; $20,000 for future medical services; and $223,000 for past and future physical pain and mental anguish, loss of earnings, and loss of future earning capacity.

remoteness, being one of judicial discretion, will not be disturbed unless it is evident that the trial judge abused his discretion in the ruling made." See also Dallas County Water Control & Imp. Dist. No. 7 v. Ingram, 395 S.W.2d 834 (Tex.Civ.App.— Dallas 1965, writ ref'd n. r. e.); United Benefit Fire Ins. Co. v. Stock, 344 S.W.2d 941 (Tex.Civ.App.—Houston 1961, no writ).

■ We cannot say from the record before us that the trial court abused its discretion in holding appellee's conviction nine years before this trial was too remote, particularly in view of his youthful age at the time of commission of the crime and his apparent successful rehabilitation.

■ Appellant urges by its second point that the trial court erred in submitting an issue as to future medical expense over its timely objection, in that there is insufficient evidence that appellee would require same. The jury found that the reasonable and necessary costs of future medical services would be $20,000. There is clear evidence from appellee's doctors as to his future need for medical services, but there is very little testimony relative to the probable cost of same. Since there is nothing in the record to indicate the basis of the trial court's remittitur, and specifically whether all or a part of the future medical award was set aside, this point does not present reversible error under Rule 434, Texas Rules of Civil Procedure, other than as it relates to appellant's complaint of excessiveness of the judgment of the court.

Appellant's final three points urge that the verdict of the jury is grossly excessive so as to show that it is the result of passion, prejudice and bias, and that the judgment, even after the remittitur, is manifestly too large and is grossly excessive. These points are based entirely on the size of the verdict, in that there is no showing of jury misconduct, improper evidence, or improper argument. The entire trial was remarkably free of objections and there is nothing in the record to indicate that the testimony concerning damages was presented in an inflammatory manner.

■ The applicable rule in considering the complaint of excessiveness was stated by this Court in Green v. Rudsenske, 320 S.W. 2d 228, 235 (1959, no writ), as follows: "The law is settled that before an appellate court will disturb a judgment rendered upon a jury verdict, on the grounds that such verdict is excessive, there must be circumstances tending to show that it was the result of passion, prejudice or other improper motive, or that the amount fixed was not the result of a deliberate and conscientious conviction in the minds of the jury and court, or so excessive as to shock a sense of justice in the minds of the appellate court."

Under Rule 440, T.R.C.P., if the Court of Civil Appeals "is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only," then said appellate court shall indicate a remittitur, and if timely filed the judgment shall be reformed and affirmed; otherwise it shall be reversed.

In Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959), the Supreme Court considered the authority and propriety of the trial and appellate courts to grant a remittitur. It quoted with approval the standard set by the Supreme Court in Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993 (1916), as follows: "All the Court of Civil Appeals can do, and all that is required of it to do * * * is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess * * * [(Having)] decided upon an amount that would be reasonable compensation * * * it should authorize a remittitur of the excess * * * in accordance with its sound judgment." It was further held that "there

need not be extraneous proof of passion or prejudice or any other proof" showing the verdict was improperly motivated, before sustaining the trial court's order granting the remittitur.

On August 8, 1965, appellee was riding in the caboose of one of appellant's freight trains, consisting of 112 cars, as a part of his duties as brakeman, and was injured when he was slammed into the wall of the caboose after the train made an unexpected emergency stop as a part of a yard test. When the train went into the emergency stop the slack action of from four to six inches between the knuckle and coupler on each car was caused to run in and that slammed appellee into the wall. His left shoulder struck the wall and knocked him down on his back. Although he was pretty well shaken up and "was hurting just about all over" he did not think that he was seriously injured. After completing his paper work, including a notice of this injury, appellee drove home and went to bed. He missed two days' work, but on the third day he made a regular run from San Antonio to Taylor. This trip hurt him so bad that he returned to San Antonio on a passenger train. He saw Dr. Bernhardt twice on his return and was given pain pills. He was still hurting so bad and couldn't straighten up, so that on August 18th he went to see Dr. Bellew, D.C. After five and a half months of adjustments, Dr. Bellew permitted him to return to work.

Appellant required an employee returning to work after an absence of over ninety days to pass a full physical examination by its medical director. Dr. Lawrence Reppert, M.D., appellant's local medical director, testified that although he had no independent recollection of appellee, his records showed that he examined appellee on January 24, 1966, and completed the examination on January 26th after X-rays were made. The X-rays were made of the cervical spine, as appellee said that he had injured his neck. Dr. Reppert testified that appellee had no complaints at the time of this examination and was passed to return to work.

Appellee testified that he bid for and received a lighter job from appellant, although it meant working in Cotulla. He had to quit this job on May 5, 1966, because of the pain, and never returned to work for appellant. The only other employment that he tried before the trial in March, 1967, was selling life insurance for about two months; selling advertisement signs for three or four days, and doing part-time work at a bowling alley for seven or eight days. He also did some work in his yard and some light mechanical work on his car.

Appellee clearly proved that he had sustained an injury to his spine which was serious, painful and disabling. The evidence substantially supports the summary from appellee's brief, that "he suffered injuries to the discs in the cervical * * * spine and a compression fracture in the dorsal spine resulting in severe limitation of motion, great and disabling pain, serious atrophy in the left arm, grievous impairment of future earning capacity and obvious attendant mental anguish." His principal injury is damage to the 5th cervical nerve root which is demonstrated by a narrowing of the C4–C5 interspace of his spine, by atrophy in his left arm, a reversal of the normal curvature of his upper spine, and muscle spasm, which injury was confirmed scientifically by an electromyelograph.

Dr. Warren Ross, a medical doctor specializing in orthopedics in Austin, started treating appellee on June 13, 1966, and had seen him thereafter about every three weeks. His diagnosis, based on the eleven times he had seen appellee, as well as from X-ray examination, was that appellee has a ruptured disc at the C4-C5 level and a probable compression fracture of the fifth dorsal vertebral body as well as evidence of damage to the lumbo-sacral area of the spine. He testified that appellee could not do prolonged standing, sitting, walking, bending, lifting, twisting, straining, stooping or squatting. Appellee is totally dis-

abled from doing the heavy type of work of a brakeman and will need continued medical care—medications, observation and supervision. Dr. Ross recommended sleep on a firm bed, certain exercises to improve muscle tone and increase the stretch and stability of same. He also prescribed medicine to relieve pain and to relax his muscles. Based on appellee's progress to date, he doubted there would be much change between March, 1967, and March, 1997. His total bill was $225.00 and he felt appellee's future medical requirements would be about the same as in the past.

Dr. Bellew, a chiropractor, testified by deposition that he had given appellee 112 adjustments and his fee for same was $610.00 plus $60.00 for X-rays. Although appellee testified that he secured the most relief from Dr. Bellew, appellee had not taken an adjustment after October 17, 1966. Dr. Ross did not recommend this type treatment as he believed a chiropractic adjustment would hurt the joints. Dr. Bellew testified that appellee's condition was permanent and that he would never be able to perform the duties of a brakeman again.

Probably the most demonstrative medical testimony for appellee came on rebuttal from Dr. J. R. Oates, a medical doctor specializing in physical medicine and rehabilitation in Houston. No medical reports were furnished appellant, but about a week prior to trial Dr. Allen Kingman, a medical doctor specializing in neurosurgery, was given permission to examine appellee on behalf of appellant. He testified that although his physical examination and X-rays indicated no disability to prevent appellee from returning to his job as a switchman or brakeman, he was disappointed because appellee had not permitted a scheduled electromyelogram to be performed, in that it would show something positive—it would show if something were wrong with a muscle or the nerve to the muscle. Dr. Oates was called as a rebuttal witness and testified that he had performed such a test on appellee and that, although the test was not fully completed because of appellee's severe reaction to same, it showed a ruptured cervical disc at the C4-C5 level. Based on the appellee's medical history, it was his opinion that such difficulty might, in all reasonable medical probability, be quite disabling, if not constantly, at least at times. Furthermore, it could cause unbearable pain. In his opinion appellee was seriously disabled from doing any kind of heavy work or manual labor that required consistent, regular or skilled use of the arm. If appellee were under his care, he would prescribe muscle relaxants, heat and exercise, and refer appellee to a neurosurgeon to ascertain if surgery was needed, if appellee did not respond to this treatment.

Thus it is seen that although appellee was not dramatically injured, the evidence establishes that he is permanently disabled from performing the duties of a brakeman which he had performed satisfactorily for about ten years and all his adult life. Furthermore, he is disabled from performing any type of heavy manual labor. At the time of the injury, he was earning over $7,000 annually, and by the time of the trial he had lost over $8,000 in wages. He had spent approximately $1,000 for medical services and would need about the same amount of attention for the foreseeable future. The stipulated life expectancy of a male his age is 43.3 years. Assuming appellee earned $7,000 a year over his life expectancy, he would earn in excess of $300,000. It was also stipulated that money can be reasonably and safely invested in his community at $4\frac{1}{2}\%$. There is no showing what would be the discounted value of appellee's prospective earnings, although a principal of $160,000 invested at $4\frac{1}{2}\%$ would earn in excess of $7,000 annually.

There is little evidence in the record concerning the future rehabilitation of appellee, probably because the appellant took the position at the trial, based on its medical witnesses, that appellee was not disabled from performing his regular duties as a brakeman. The record does demonstrate

that appellee is determined to be as active as possible commensurate with his pain and disability. This is not only shown by his trying to obtain other employment before the trial, but he testified: "I have done things * * * and well it's just hard. It's just hard and I hurt when I do it, but still, too, I am not going to just sit somewhere and dry up. I am just not going to do it if I can keep going." With this determination, it is reasonable to assume that appellee, who dropped out of high school as a senior, will try to find light type work in the future. It must be kept in mind, however, that he had not satisfactorily done so prior to the trial.

◼ The jury was also instructed to consider the present cash value of the sum to reasonably compensate appellee for his past and future physical pain and mental anguish. Probably no other item of damage is more difficult to describe, define or reasonably compensate. Here appellee testified to pain he felt which restricted his movements and permitted him to sleep only on his right side; his pain was markedly demonstrated by muscle spasm to the extent that he had a reverse curvature of his upper spine; his doctors corroborated his testimony that an injury of the type suffered by appellee was very painful, and that in reasonable medical probability appellee will suffer pain in the future. By its very nature the amount reasonably necessary to compensate an injured person for his past and future physical pain and mental anguish must largely be left to the discretion of the jury.

Although precedents have but little value in determining the excessiveness of a particular verdict in that each case depends largely upon its own peculiar circumstances, there are few reported cases in this State with comparable judgments. In Houston Belt & Terminal Railway Co. v. Burmester, 309 S.W.2d 271 (Tex.Civ.App.—Houston 1957, writ ref'd n. r. e.), the Court in considering the excessiveness of a judgment for $160,000 for past and future physical pain, mental anguish and diminished earning capacity of a 54-year-old ship's officer made an exhaustive review of reported cases with a large judgment. The Court stated that at that time only one Texas case disclosed a jury verdict in excess of $100,-000. After this exhaustive review the Court ordered a remittitur of $40,000. We can take judicial notice of the ever-decreasing value of the dollar over the past decade which is reflected in verdicts and judgments.

In Missouri Pacific Railroad Co. v. Kimbrell, 326 S.W.2d 720 (Tex.Civ.App.—Texarkana 1959), affirmed 160 Tex. 542, 334 S.W.2d 283 (1960), a judgment, whereby a 33-year-old car inspector recovered $120,-000 for injuries very similar to those of appellee, was affirmed after a remittitur of $30,000. In Viking Construction Co. v. Beaird, 337 S.W.2d 699 (Tex.Civ.App.—Waco 1960, no writ), a remittitur of $31,200 was entered and judgment of $140,000 affirmed for a 46-year-old man with average annual earnings of $4,680. He did have more extensive injuries than appellee.

In Texas Consolidated Transp. Co. v. Eubanks, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.) a judgment was affirmed wherein the surviving widow of a 63-year-old engineer earning $9,000 annually recovered $125,000 and their 13-year-old daughter recovered $37,500. In Fort Worth & Denver R. Co. v. Coffman, 397 S.W.2d 544 (Tex.Civ.App.—Fort Worth 1965, writ dism'd), judgment was affirmed whereby a 49-year-old conductor earning about $9,000 annually recovered $160,000. His injuries, like those of appellee, did not appear to be as serious as subsequent history proved.

In Robertson v. Rig-A-Lite Co., 394 S.W.2d 838 (Tex.Civ.App.—Houston 1965, no writ), a judgment was affirmed whereby a 31-year-old man earning approximately $6,000 annually recovered the sum of $500,-000. His injuries resulted in the loss of both hands and one leg below the knee. The Court held that this judgment was not so wrong as to require a new trial, al-

though the Court expressly did not consider the question of a remittitur since that issue was not raised.

In Phillips Pipe Line Co. v. Razo, 409 S.W.2d 565 (Tex.Civ.App.—Tyler 1966), reversed and rendered on liability issues, 420 S.W.2d 691 (Tex.Sup.1967), the Court of Civil Appeals ordered a remittitur of $104,288 and affirmed a reformed judgment of $200,000 for a 35-year-old man who suffered what was described as a horrible injury—first, second and third degree burns over 38% of his body. It is seen that although appellee does not have as extensive or dramatic an injury as in most cases with a comparable verdict, his life expectancy is longer and his earning potential is greater.

Appellee sought $246,000 by his pleadings and from the jury. Even though the testimony of appellant's medical witnesses would have supported a small verdict, in its brief appellant does not contend that appellee is not entitled to a substantial sum of money. Although the verdict is large, particularly in view of the fact that appellee has never spent a day in the hospital, we cannot say from this record that the verdict is so unreasonable as to require a new trial.

A more difficult question is presented as to a remittitur. The trial court has already granted a remittitur of $44,000. This still leaves a judgment for $200,000 which is unquestionably a substantial sum of money for the injury sustained by appellee. We cannot say, however, after a review of this record that the judgment as reformed is so excessive as to shock our sense of justice or is so unreasonable as to require a remittitur.

Appellee urges by counter-point that the trial court erred in requiring a remittitur of $44,000. We cannot say that such order of remittitur was manifestly unjust when considered in the light of the whole record and therefore overrule such counter-point. Flanigan v. Carswell, supra.

The judgment is affirmed.