REMUDA OIL & GAS COMPANY,
Appellant,

v.

Woodrow Parr NOBLES, Appellee.

No. 18407.

Court of Civil Appeals of Texas,
Fort Worth.

Jan. 29, 1981.

Feb. 26, 1981 (supplemental opinion).

Rehearing Denied Feb. 26, 1981
(2 motions).

Maxwell, Bennett, Thomas & Maxwell, and Richard Gary Thomas, Dallas, for appellant.

Edward J. Hennessy, Houston, for appellee.

## OPINION

HUGHES, Justice.

Woodrow Parr Nobles was struck and injured by an unsecured flow line while he was "flowing back" an oil well owned and operated by Remuda Oil and Gas Company. Nobles brought suit against Remuda on the basis of negligence. From a verdict and judgment in favor of Nobles Remuda has prosecuted this appeal.

We affirm subject to remittitur.

Flow back procedures are normally performed after a well has been "fracked" which involves injecting pressured materials into an oil well for purposes of widening passages through which oil can flow in the process of its extraction. The injection material is flowed back out through a pipe known as a flow line.

Nobles was injured when the pressure contained in Remuda's oil well caused the unstaked (unsecured) flow line to strike Nobles as he was "flowing back" the material which had been injected into the well.

There is conflicting testimony as to the sequence of events leading up to the accident. The evidence will be discussed when pertinent to the discussion. The case was tried before eleven jurors who, in special issues, found Remuda to be negligent and Nobles not to be negligent. Judgment was rendered in favor of Nobles on the verdict and damages of various types were awarded. Remuda has urged several points of error.

Remuda's nineteenth point of error charges that the trial court erred by proceeding to trial with only eleven jurors, since the twelfth juror was not disabled but was only temporarily unavailable to sit as a juror because of weather conditions.

Tex.R.Civ.P. 292 provides in part:

" . . . where as many as three jurors die or be disabled from sitting and there are only nine jurors remaining on an original jury of twelve, those remaining may render and return a verdict. . . ."

It has been held that the disability which will be sufficient to justify the dismissal of a juror is largely left to the discretion of the trial judge. *Southern Pacific Transportation Company v. Peralez*, 546 S.W.2d 88 (Tex.Civ.App.—Corpus Christi 1976, ref. n. r. e.). Remuda argues, however, that the plain wording of Rule 292 suggests that the trial court is authorized to exercise its discretion *only* when a juror is physically or mentally "disabled." We disagree.

■ Illness, mental disability, misconduct, drunkenness *or other facts* are subject to the discretionary consideration of the trial court in determining disability. *Dickson v. J. Weingarten, Inc.*, 498 S.W.2d 388 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); 3 R. McDonald *Texas Civil Practice*, § 11.14 (Rev.1970).

Remuda further argues that if the trial court was empowered to exercise discretion, its discretion was abused.

■ The record reveals that the trial court found that the case should be disposed of because two continuances had been granted to Remuda and the case had been specially set for trial on January 28, 1980. The trial court further found that bad weather conditions, causing hazardous road conditions, would not improve on January 29 and could continue until January 30. The trial court ordered that the absent juror be called and as a result learned that: the absent juror was a 61 year old woman who lived in a city outside Forth Worth; she was terrified of icy road conditions; there was no bus system; she had no neighbors available; and her only relative was a son who lived in Dallas.

Under these circumstances we hold that the trial court did not abuse its discretion in proceeding to trial in the absence of the twelfth juror. Remuda's nineteenth point of error is overruled.

Remuda's first point of error is that the trial court erred in refusing to submit Remuda's requested charge to the jury inquiring whether Nobles was an independent contractor of Remuda because it is a controlling issue and is raised by the pleadings and evidence.

We overrule Remuda's first point of error because Nobles' status as an independent contractor is undisputed and therefore it is unnecessary that an issue be submitted to the jury on this matter. Tex.R.Civ.P. 277, 279; *William B. Roberts, Inc. v. McDrilling Company, Inc.*, 579 S.W.2d 335 (Tex.Civ. App.—Corpus Christi 1979, no writ).

Remuda's second point of error is that the trial court erred in submitting an issue to the jury inquiring whether Remuda was negligent in failing to stake down the flow line and in rendering judgment for Nobles on the finding to such issue because the evidence establishes, as a matter of law, that Remuda owed no such duty to Nobles because he was an independent contractor.

■ In order for a plaintiff to establish the tort liability of a defendant he must prove the existence and violation of a legal duty owed to him by that defendant. *Aba-*

los v. *Oil Development Company of Texas*, 544 S.W.2d 627 (Tex.1976); *Coleman v. Hudson Gas and Oil Corporation*, 455 S.W.2d 701 (Tex.1970).

■ Nobles was asked by Remuda's representative, Tom Ellsworth, to flow back the Chinn-Ashby No. 1; thus, Nobles was a business invitee/independent contractor on the premises at the time of the occurrence in question. As was noted in *Shell Chemical Company v. L. Lamb*, 493 S.W.2d 742, 746 (Tex.1973):

"The cases in this area fall into two distinct lines. First, there are those cases in which the dangerous condition existed on the premises at the time of the invitee's entry for business purposes or in which the dangerous condition was created by someone or through some means unrelated to the activity of the injured invitee or his employer .... Secondly, there are those cases in which the dangerous condition arose out of the performance of the work for which the subcontractor/invitee was employed...."

Remuda argues that this case comes within the second category while Nobles argues that it comes within the first category. We must agree with Remuda. An unsecured flow line is not dangerous in and of itself. An unsecured flow line becomes dangerous only when pressure is released through it. Therefore, when an independent contractor is employed to flow back an oil well the danger would normally arise from the manner in which the independent contractor performed the work.

■ An owner/occupier of premises can usually assume that an independent contractor will perform his responsibilities in a safe and workmanlike manner taking proper care and precautions to assure his own safety. Therefore, an owner/occupier is usually not liable for injuries arising from the contractor's performance of the work. However, an owner/occupier of land may become liable for injuries sustained by an independent contractor which are occasioned by the interference or intermeddling of the owner/occupier. *J.A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728 (Tex.Civ.App.—

Amarillo 1967, writ ref'd n. r. e.); *Allen v. Texas Electric Service Company*, 350 S.W.2d 866 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n. r. e.); *Texas Electric Service Co. v. Holt*, 249 S.W.2d 662 (Tex. Civ.App.—Fort Worth 1952, writ ref'd n. r. e.). There is evidence in the record that at the time of the flow back operation Tom Ellsworth, representing Remuda, was present at the wellsite. There is also testimony in addition to an admission by Ellsworth that Ellsworth was "in charge."

■ We overrule Remuda's second point of error because it is not true that, as a matter of law, Remuda owed no duty to Nobles because he was an independent contractor.

Remuda's third and fourth points of error assert that the jury answer that Remuda was negligent in failing to stake down the flow line is supported by factually insufficient evidence and is against the great weight and preponderance of the evidence.

In disposing of these points of error we must consider all the evidence and set aside the jury's findings only if the answers are so contrary to the overwhelming weight and preponderance of the evidence so as to be manifestly unjust. The jury is the judge of the weight to be given testimony provided it is reasonable in its conclusions.

There appears to be no question that the accident would not have occurred had the flow line been staked down. Tom Ellsworth, an experienced petroleum engineer representing Remuda, was present when the well was fracked and possessed information as to pressure existent in the well during the fracking and at the completion of the fracking. There is testimony to the effect that the only information conveyed to Nobles as to the pressure was that the well was "tight." There was no pressure gauge on the valve system.

Although certain of the equipment was changed out, there is testimony that Ellsworth said that it was not necessary to stake the flow line down despite Nobles' suggestion that it was too dangerous. Ellsworth conceded it was a good idea to stake

down flow lines because all wells act differently. Nobles also testified that he always staked down flow lines in the past and that it was industry practice to stake them down.

Although Remuda presented evidence to the effect that the valve allowing the material to flow out should be opened slowly with attention being paid to the "feel" of the flow line there is also testimony that Ellsworth told Nobles to open the valve widely.

■ We hold that the evidence is sufficient to show that Tom Ellsworth interfered in the flow back operation and furthermore that the evidence is sufficient to support the jury's findings that Remuda, through its agent, was negligent in not staking down the flow line. We overrule Remuda's third and fourth points of error.

In several points of error Remuda contends that Nobles was contributorily negligent. Before considering Remuda's factual contentions as to Nobles' contributory negligence we will consider Remuda's seventeenth and eighteenth points of error which involve the standard of care applicable to Nobles.

Remuda had requested submission to the jury of an issue inquiring whether Nobles was an expert in the management and operation of oil wells. In the event the jury found Nobles was an expert, an instruction contained in the requested issue directed the jury to apply a requested definition of ordinary care which defined the ordinary care to be exercised by Nobles as:

"that degree of care which experts in the management and operation of oilwells, engaged in such activities in Zavala County, Texas on or about May 27, 1976, would exercise under the same or similar circumstances."

The trial court refused to submit the requested issue and definition and submitted this definition of ordinary care:

" 'ORDINARY CARE' means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances."

Remuda complains of the trial court's refusal to submit its requested issue and definition.

As was pointed out in *Mobil Pipe Line Company v. Goodwin*, 492 S.W.2d 608, 613 (Tex.Civ.App.—Houston [1st Dist.] 1972, ref'd n. r. e.), "Professional men in general and those who undertake any work calling for special skill are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability."

A review of Texas cases reveals that persons in business other than doctors, lawyers, and architects, etc., have been held to a standard of care commensurate with persons in like business under similar circumstances. *Taylor v. White*, 212 S.W. 656 (Tex.Comm'n App. 1919, jdgmt. adopted); *Fort Worth and Denver Railway Company v. Coffman*, 397 S.W.2d 544 (Tex.Civ.App.—Fort Worth 1965, writ dism'd); *Texas Coca-Cola Bottling Co. v. Kubena*, 109 S.W.2d 1098 (Tex.Civ.App.—Eastland 1937, no writ). However, the inquiry is whether the trial court committed reversible error in refusing to submit the requested definition and issue. We hold it did not.

■ The manner of submitting definitions and explanatory instructions to the jury is within the discretion of the trial court with a view to enabling the jury to properly pass upon and render a verdict. *McCane Sondock Detective Agency v. Penland Distributors, Inc.*, 523 S.W.2d 62 (Tex. Civ.App.—Houston [14th Dist.] 1975, no writ); *Texaco Country Club v. Wade*, 163 S.W.2d 219 (Tex.Civ.App.—Galveston 1942, no writ).

■ After having heard much evidence as to the work background and experience of Nobles and having heard that part of the submitted instruction relating to consideration of "the same or similar circumstances" the jury undoubtedly took into consideration the status of Nobles. We cannot hold that the error, if any, "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judg-

ment in the case." Tex.R.Civ.P. 434. An issue inquiring about Nobles' expert status is not controlling and refusal to submit the issue was not error. Tex.R.Civ.P. 277.

We overrule Remuda's seventeenth and eighteenth points of error.

Remuda's fifth through sixteenth points of error, in summary, assert that the trial court erred in entering judgment for Nobles because, as a matter of law, Nobles was contributorily negligent in failing to stake down the flow line; in failing to open the well valve slowly; and in failing to keep a proper lookout, which contributory negligence, as a matter of law, contributed in excess of 50% of the negligence proximately causing the occurrence in question. Furthermore, Remuda contends the jury's findings that Nobles was not contributorily negligent are (1) supported by factually insufficient evidence, and (2) is against the great weight and preponderance of the evidence.

Remuda presents no arguments or authorities in support of its points of error relating to Nobles' contributory negligence in failing to keep a proper lookout for his own safety. These points are deemed to have been waived under Tex.R.Civ.P. 418. We therefore overrule Remuda's thirteenth through sixteenth points of error.

Remuda's arguments as to Nobles' alleged contributory negligence are founded primarily on Noble's experience in the oil fields and his resultant knowledge and appreciation of the dangers attendant to flowing back a well without staking down the flow line and in not opening the valve slowly with a feel for the flow. Remuda points out that Nobles did observe and comment upon the possible danger of flowing back the Chinn-Ashby No. 1 as it was equipped on the occasion in question.

We would agree that Nobles may have been contributorily negligent had it not been for the fact that Remuda's representative, Ellsworth, was at the wellsite and there is testimony that: Ellsworth was "in charge"; Ellsworth said there was no need to stake down the flow line after Nobles had voiced concern as to possible danger; *Nobles did not have information as to the well pressure but Ellsworth did*; and Ellsworth told Nobles to open the valve widely.

█ Under circumstances where an independent contractor receives much of his income from an employer whose representative, an experienced petroleum engineer who had been at the wellsite when it was fracked and possessed information as to the existent pressure, told him there was no need to take certain precautions, it would not be unreasonable for a jury, on the basis of testimony, to refuse to find the independent contractor, who did not know the existent pressure, to be contributorily negligent. The reasonableness of an actor's conduct in confronting a risk under principles of contributory negligence depends on many factors. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978).

We overrule Remuda's fifth through twelfth points of error.

Remuda's twentieth through twenty-fifth points of error assert that the trial court erred in rendering judgment for Nobles for $143,000.00 because there is no evidence to support the jury's findings that Nobles suffered damages in the total amount of $21,000.00 for past and future loss of earning capacity; and such findings are: (1) not supported by factually sufficient evidence, and (2) are against the great weight and preponderance of the evidence.

Nobles' testimony was that prior to the accident he averaged about $1200.00 per month from Remuda and that this constituted 75–80% of his income. In support of this testimony Nobles introduced several invoices into evidence. He also testified that he earned $550.00 per month from other employers. He could offer no invoices to support this testimony because these records were allegedly lost or destroyed. Remuda's complaint is that Nobles did not introduce any evidence as to what his expenses were although Nobles did testify that he paid his own expenses for items such as: gas, oil and repairs for his truck; social security taxes; and income taxes.

Nobles further testified that: after the accident he lost the contracts to perform

work on some wells and with the help of his wife and son-in-law he was able to retain some of the other wells for which he had contracted; he could not perform the work himself because he could not climb the tank batteries; he eventually lost all the wells he was working on; he found employment with Cacahuate Gas Corporation a year after the accident from which he earned $1500.00 per month; his inability to climb the tank batteries caused him to refuse an offer made in 1979 of a salaried position with duties basically the same as those he performed before the accident; the position had a salary of $2100.00 per month.

The rule in Texas is that where a plaintiff seeks damages for impairment of his earning capacity, he must prove the amount of such damages with the degree of certainty to which it is susceptible. The plaintiff must introduce evidence, in monetary terms, from which a jury may reasonably measure his loss of earning capacity. His failure to do so must be supported by good reason. Either actual earnings or a monetary measure of earning capacity *prior* to the injury should be shown. The jury must not be left to conjecture or surmise. *King v. Skelley*, 452 S.W.2d 691 (Tex.1970); *Bonney v. San Antonio Transit Company*, 325 S.W.2d 117 (Tex.1959).

By not introducing any evidence as to what his expenses were Nobles has not put the jury in possession of sufficient evidence as to his loss of earning capacity. An independent contractor's net earnings are not just the amounts received but require a deduction of expenses incurred. Nobles argues, in his brief, that he testified to the loss or destruction of his expense records. Nobles did testify that after the accident his son-in-law and daughter had to take "a lot of stuff out to their house, and a lot of it disappeared." However, this testimony was in response to a question inquiring not about expenses but about records of amounts paid to him during certain years. No testimony relating directly to expenses was introduced as to why Nobles could not prove the loss of earning capacity to the degree of certainty to which it was susceptible.

Nobles further argues that the offer of a salaried position in 1979 would suffice to sustain the jury's award as to loss of earning capacity. We disagree. In *King v. Skelley, supra,* a monetary measure other than actual earnings, was held sufficient. There, the plaintiff testified that *before* sustaining his injury he could have made certain sums per year in the employ of another. The salary offer received by Nobles was made almost three years after his accident rather than before his accident. We hold this evidence to have failed to provide a sufficient basis for a jury to make determination as to how much of Nobles' earning capacity was lost.

We therefore sustain Remuda's twentieth through twenty-fifth points of error.

We affirm the judgment of the trial court subject to a remittitur of $21,000.00. Nobles is to be permitted (15) days within which to file such remittitur, failing which the judgment will be one of reversal, with remand, but if filed the judgment, as thus reduced, is affirmed.

### SUPPLEMENTAL OPINION

Appellee having filed in writing, subject to his motion for rehearing, the remittitur as suggested in our original opinion, and appellee's motion for rehearing having been overruled, it is ordered that the judgment as reduced by the remittitur, be affirmed.